Herman GRIFFIN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9010–CR–619.

Court of Appeals of Indiana,
Second District.

Dec. 31, 1991.

Rehearing Denied Feb. 24, 1992.

Howard Howe, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. and Mary Dreyer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

Herman Michael Griffin appeals his conviction for attempted rape, a class B felony,[1] sexual battery, a class D felony,[2] and confinement, a class D felony.[3]

We affirm the conviction for attempted rape; we reverse and order the convictions for sexual battery and confinement vacated.

### ISSUES

We restate the issues on appeal as follows:

1. Whether sufficient evidence exists to support Griffin's convictions.

2. Whether the trial court erred in overruling Griffin's objection to the victim's lengthy discourse on the criminal justice system during the sentencing hearing.

### FACTS

At approximately 9:30 p.m. on August 26, 1989, V.H. returned to her Indianapolis apartment from the Lafayette Square Mall. Although the sky was not completely dark, the street lights and V.H.'s car headlights were illuminated. As she pulled up to her apartment, V.H. observed Griffin standing by a trash dumpster located next to her apartment and staring at her. She parked her car and walked to her front door but then realized she had forgotten to close the

---

**1.** IC 35–41–5–1 (1991 Supp.); IC 35–42–4–1 (1991 Supp.).

**2.** IC 35–42–4–8 (1988).

**3.** IC 35–42–3–3 (1991 Supp.).

window on the passenger side of her car. As she returned to her car, Griffin walked past her. She noted Griffin was a clean-shaven, black male with a muscular build wearing a dark blue or black tank top and dark-colored sweat pants with white lines running down the sides of each leg.

After closing the window, V.H. walked toward her apartment door. While searching for her house key, V.H. saw Griffin walk toward a neighbor's door and glance into the neighbor's window and thought she heard him say something. Suddenly, she was thrown to the ground and felt a hand cover her mouth. As soon as she realized Griffin was attacking her, she unsuccessfully tried to stab his eyes with her keys.

Griffin kissed V.H.'s mouth, using his body weight to pin her down. Keeping one hand over her mouth and the other on her left thigh, Griffin fondled V.H.'s body with his mouth. V.H. struggled and tried to scream, but Griffin threatened to punch her if she continued to resist. Next, Griffin fondled V.H. with his hand and pulled her pants down. She made a sound and he punched her in the stomach. V.H. told him she was pregnant and begged him to let her go for her baby's safety. When he finally released her, she had a full back view of him as he ran away.

Approximately one and one-half hours later, police officers, using the description V.H. gave them immediately following the attack, spotted Griffin driving near V.H.'s apartment complex and stopped him. With the assistance of a spotlight, V.H. examined Griffin for about one minute and noticed a thin moustache. She asked, "Is that a moustache?" and continued to look at him for two more minutes before positively identifying him as her assailant. She reaffirmed the identification in court during the jury trial.

Griffin was convicted of attempted rape, sexual battery, and criminal confinement. The trial court sentenced him to twenty years on the attempted rape conviction and three years each for the sexual battery and confinement convictions. The confinement sentence was ordered to be served consecu-

tive to the sentences for attempted rape and sexual battery. Additionally, because Griffin was determined to be a habitual offender, the sentence on the attempted rape conviction was enhanced an additional thirty years, for a total sentence of fifty-three years. Griffin appeals.

## I.

Griffin contends V.H. did not adequately identify him as her assailant because she failed to notice his moustache and goatee and his permanent left eye injury, and because she described his grey tank top as dark blue or black. Furthermore, the testimony of Griffin's alibi witnesses placed him at another location at the approximate time of the attack. Thus, Griffin argues the evidence is insufficient because "it cannot be said reasonably that the intended inference may logically be drawn" that Griffin was the man who attacked her. Appellant's Brief at 17.

■■ It is the jury's duty to consider all evidence presented at trial and resolve the issues as it sees fit. *Gonzales v. State* (1988), Ind., 530 N.E.2d 739, 740. Any discrepancies in the victim's descriptions of her assailant or the sequence of events relate to the victim's credibility, which the jury is in the best position to evaluate. *Birch v. State* (1991), Ind.App., 569 N.E.2d 709, 712. As such discrepancies pertain to the weight of the evidence, the jury's decision in that regard normally will not be overturned on appeal. *Scruggs v. State* (1987), Ind., 511 N.E.2d 1058, 1060. Thus, when reviewing the trial court's determination, we neither reweigh the evidence nor redetermine the credibility of the witnesses. *Everroad v. State* (1991), Ind., 571 N.E.2d 1240, 1244. Only on the rare occasion when "the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it" will this court impinge on the jury's determination of witness credibility. *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904.

■ The uncorroborated testimony of a victim is sufficient to sustain a conviction. *Gonzales*, 530 N.E.2d at 740–41.

Furthermore, identification testimony need not necessarily be unequivocal to sustain a conviction. *See Mumford v. State* (1987), Ind., 514 N.E.2d 624, 625 (conviction upheld despite eyewitness's failure to notice defendant's burn scars on his neck and upper chest, the absence of half of his left third finger, and the lack of eyeglasses); *Scruggs*, 511 N.E.2d at 1060 (conviction upheld even though rape and robbery victim described her attacker's brown boots as black).

■ The evidence here reveals V.H. unequivocally identified Griffin soon after the attack and again in court. She testified the apartment complex lights and her neighbor's porch lights were illuminated, thus providing ample lighting for V.H. to view Griffin during the ten minutes he was at the scene of the attack; the attack occurred "right under" the neighbor's illuminated porch light. V.H. described Griffin's physical appearance and clothing in detail, and police apprehended him less than two hours later in the vicinity of her apartment complex. Given this testimony, the jury's "logical inference" implicating Griffin is reasonable. As "[t]his is not a case of a lack of evidence to support a verdict, but rather a case of conflicting evidence to be weighed by the jury," *Gonzales*, 530 N.E.2d at 741, we will not disturb the jury's decision on witness credibility.

■ However, our examination of the record reveals the sexual battery and confinement convictions violate the federal and state protections against double jeopardy.[4] Here we are concerned with that branch of double jeopardy that protects against multiple punishments in a single trial for the same offense. Absent some express legislative expression, cumulative punishment is not authorized where two statutory provisions proscribe the same conduct. *Sering v. State* (1986), Ind.App., 488 N.E.2d 369, 374. As stated by the Supreme Court, "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing a greater punishment than the legislature intended." *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 103

S.Ct. 673, 678, 74 L.Ed.2d 535. One method of determining the legislative intent involves application of the *Blockburger* test to ascertain the "sameness" of two offenses:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306.

Another method of determining legislative intent is to examine the offenses in light of IC 35–38–1–6 (1988). That statute prohibits cumulative convictions and punishments where defendants are convicted of included offenses.

> Whenever:
>
> (1) a defendant is charged with an offense and an included offense in separate counts; and
>
> (2) the defendant is found guilty of both counts;
>
> judgment and sentence may not be entered against the defendant for the included offense.

IC 35–38–1–6 (1988).

■ The statutory definition of an included offense includes an offense that "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged." IC 35–41–1–16(1) (1988). This definition encompasses offenses which do not each require a separate distinct element and those which are included because of the manner in which the greater offense is charged. *Sering*, 488 N.E.2d at 375. Forcible rape and confinement fall within this last category. If a person is forcibly raped, or raped by the threat of force—the element of force—whether actual, threatened, or constructive, constitutes the crime of confinement defined as a substantial interference with a

---

4. U.S. Const. amend V; Ind. Const. art. 1 § 14.

person's liberty. *See* IC 35–42–3–3 (1991). Therefore, where the crime of rape is charged as forcible rape, the charge necessarily includes the crime of confinement to the extent force, or the threat of force, effectuates the rape. Of course, any other confinement of the victim beyond that inherent in the force used to effectuate the rape constitutes a violation of the confinement statute apart from the violation inherent in the offense of forcible rape. *Ryle v. State* (1990), Ind.App., 549 N.E.2d 81, 85 n. 7.

Here, Griffin was charged with attempted rape. The substantial step element was charged as "throwing [V.H.] to the ground, pulling down her pants and panties, touching her vagina, kissing her and by struggling with her...." Record at 2. The confinement was charged as "holding [V.H.] on the ground outside an apartment...." Record at 3. The only evidence of confinement was that occurring during the attempted rape; there was no extraneous interference with her liberty other than that necessary to effectuate the attempted rape. Therefore, the confinement to effectuate the rape is an included offense. *See Wethington v. State* (1990), Ind., 560 N.E.2d 496, 507 (confinement conviction vacated because confinement was the force by which robbery was effectuated); *Wells v. State* (1991), Ind.App., 568 N.E.2d 558, 563 (confinement conviction vacated because no extraneous interference with victim's liberty other than that necessary to effectuate the attempted rape and robbery).

■ The definition of an included offense also includes "an offense that ... differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission." IC 35–41–1–16(3) (1988). This definition requires the vacation of Griffin's convictions of sexual battery.

In *Watkins v. State* (1991), Ind.App., 571 N.E.2d 1262, the defendant was charged and convicted of child molesting, defined as fondling and touching with intent to arouse and satisfy sexual desires, and with attempted child molesting as attempted sexual deviate conduct. Asserting that the State proved Watkins fondled the victim's genitals and placed his penis in the victim's rectum, this court affirmed Watkins's separate convictions for child molesting, as touching and fondling, and for attempted child molesting as attempted sexual deviate conduct.

> [W]e are not prepared to say that the harm sustained by J.W. in having his own sex organ touched by Watkins' hands or mouth was no different or any less egregious than the harm ensuing from the act charged as deviate sexual conduct, which involved the sex organ of Watkins and the anus of the victim, such as would render the crimes factually lesser included offenses within the meaning of I.C. 35–41–1–16(3) or constitute the same injurious consequences for double jeopardy purposes.

*Watkins*, 571 N.E.2d at 1268. However, on transfer, our supreme court reversed the child molesting conviction resulting from the fondling and touching, agreeing with Watkins's assertion that the multiple convictions for acts committed within moments of each other as part of one incident could not be sustained under the supreme court's decision in *Bowling v. State* (1990), Ind., 560 N.E.2d 658.

In *Bowling* the defendant fondled the victim's vagina, inserted his finger, and then committed cunnilingus upon her. A jury trial resulted in his conviction of child molesting as both a class B and a class C felony. His separate sentences were ordered served concurrently. On appeal Bowling asserted the "conduct did not represent two separate occasions but took place simultaneously on one occasion." *Id.* at 660. The court agreed and reversed Bowling's class C felony conviction because "two sentences for the same injurious consequences sustained by the same victim during a single confrontation violate[ ] both Federal and State double jeopardy prohibitions ... *Hansford v. State* (1986), Ind., 490 N.E.2d 1083." *Id.* Inasmuch as child molesting as fondling and touching with

intent to gratify includes all the same elements of sexual battery, the applicability of *Bowling* and *Watkins* are apparent as is the implicit overruling of *Scrougham v. State* (1990), Ind.App., 564 N.E.2d 542, *trans. denied.*

In *Scrougham* this court held separate convictions and sentences for rape and sexual battery arising from a single confrontation did not violate the protections afforded by the double jeopardy clauses of the United States and Indiana constitutions. However, in affirming the trial court, this court determined only that the offenses were not the same under the standard developed in *Blockburger* and *Brown v. Ohio* (1977), 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187; it did not address the statutory lesser harm standard. *Bowling* and *Watkins* implement the legislative intent that a defendant shall not be convicted and punished for an offense that constitutes a less serious harm to the victim. We implement the legislative intent by ordering Griffin's conviction and sentences for sexual battery vacated.

### II.

Griffin argues he was prejudiced by the trial judge allowing V.H. to speak at length on her views of a female attorney representing Griffin and the criminal justice system. Griffin believes V.H.'s "unsubstantiated accusations and gender-related insults" influenced the judge to pronounce a sentence disproportional to the offenses.

■■■ In a proceeding tried to the court, we generally presume the trial court renders its decisions solely on the basis of relevant and probative evidence. *Coleman v. State* (1990), Ind., 558 N.E.2d 1059, 1062. *Coleman* extended the presumption to sentencing hearings. This record is totally devoid of any indication the application of this presumption is inappropriate. The trial court specially noted the absence of any mitigating factors. The aggravating factors specified by the trial court, including Griffin's recent probation violation and his lengthy criminal history which included adult convictions for voluntary manslaughter, robbery, and possession of marijuana, adequately explain and support the en-

hanced sentence. Further, a victim has a statutory right to make a statement concerning the crime and the sentence. Indiana Code 35–38–1–8(b) (1991 Supp.) provides a "victim present at sentencing in a felony ... case shall be advised by the court of a victim's right to make a statement concerning the crime and the sentence."

Thus, we find no error in the trial court allowing V.H. to make her statement and vent her frustrations. In so doing, the trial court afforded V.H. a type of "recovery therapy" by which she might expedite her recuperation from the fear and humiliation she suffered as the victim of a senseless and brutish attack on her physical being that also was an affront to her personal and sexual dignity.

The judgments of conviction and sentence for sexual battery and confinement reversed and ordered vacated; the judgment of conviction and sentence for attempted rape affirmed.

BARTEAU and SULLIVAN, JJ., concur.