**Thomas R. BECKER, III,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 02A03–9108–CR–251.

Court of Appeals of Indiana,
Third District.

Jan. 27, 1992.

Mark E. Kiefer, Tremper, Bechert, Leonard & Terrill, P.C., Fort Wayne, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant Thomas R. Becker, III appeals his convictions on two counts of child molesting.

Three issues are raised for review:

(1) whether there is sufficient evidence to support the verdict;

(2) whether the trial court erred in giving the State's tendered Final Instruction No. 2, which informed the jury that the uncorroborated testimony of the victim alone is sufficient to sustain a conviction; and

(3) whether the trial court erred in refusing defendant's tendered Final Instruction No. 1, the final paragraph of which directed the jury to adopt, from two competing constructions or interpretations of evidence, that interpretation which is consistent with defendant's innocence.

Defendant was charged and convicted with two counts of child molesting, Class B felonies. Defendant's first conviction was for performing deviate sexual conduct on K.B., his four-year-old daughter, by "placing his finger into [her] vagina" during January or February 1990. The second conviction was for performing deviate sexual conduct on K.B. by "placing his mouth on [her] vagina" during January or February 1990.

K.B. testified at trial that defendant had placed his tongue on her vaginal and anal areas. She stated that defendant also placed his finger and his penis in her vagina. K.B. said that this had felt "bad" and she had told the defendant, her father, so. K.B. also testified that she had previously been molested by her Uncle David. She said that he had placed his penis in her vagina but had never done anything to her with his tongue. K.B. stated that her father was the only person that had ever put his tongue on her vagina. On cross-examination, K.B. admitted that she had previously told Detective Camp that her father did not do these things to her.

K.B.'s mother, Holly, testified that she suspected the molesting in February 1990, when K.B. gave Holly a kiss and stuck her tongue in Holly's mouth. Upon questioning why K.B. had done this, K.B. responded that she was giving Holly a "daddy kiss." K.B. informed Holly that her father had put his tongue in her vagina. Holly called the police department and the doctor.

At the doctor's office, Holly noticed that K.B.'s vaginal area was very swollen and red. There was a green discharge present. While K.B. had had vaginal infections previously, Holly testified that the infections had never looked like that or been that severe. The doctor found that there was no physical evidence of abuse, but it was a possibility.

Holly testified that K.B. had been molested previously by defendant's brother, Uncle David, in September 1989. However, the police were not going to pursue the uncle since he was a minor and lived out of state.

Holly admitted that at one point K.B. began naming several people who abused her including her father, her uncle, her Aunt Debby, and two boys in the neighborhood, J.J. and Robert.

K.B. has a speech problem and had been determined to have a learning disability, although she was to start in the regular kindergarten class.

Holly testified that defendant had been a good father and had a good relationship with the children. She admitted that defendant had been alone with the children. After these allegations, she had taken the children and gone to a shelter. When defendant moved out of their house, she returned with the children. However, defendant returned to live with them while she had surgery.

Patricia Smallwood, the director of the Victim's Assistance Program, testified that she interviewed K.B. after there was an additional allegation of abuse by someone other than the defendant. She testified that K.B. had told her that the defendant and her Uncle David had touched her vagina. However, K.B. stated that her father was the only one to touch her vagina with his tongue.

Detective Camp testified that the doctor had told him that "he couldn't be conclusive, but it was possible" that sexual abuse had taken place. The doctor stated that there were no bruises or other findings that were consistent with evidence of abuse.

Finally, defendant testified. He denied all allegations of sexual abuse.

The jury convicted defendant on both counts of child molesting.

■ The uncorroborated testimony of the victim is sufficient to sustain a conviction. *Jones v. State* (1991), Ind.App., 569 N.E.2d 975. Defendant challenges K.B.'s testimony essentially on the ground that it is inherently incredible. This Court will not impinge on the jury's responsibility to assess credibility and weigh evidence, unless this Court is confronted with inherently improbable testimony, or equivocal, wholly uncorroborated testimony of incredible dubiosity. *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090.

■ Defendant points to the fact that K.B. told the detective that defendant had done nothing and that K.B.'s mother testified that at one point K.B. was naming several people. To begin with, K.B.'s testimony at trial was very consistent. As for the inconsistencies in what K.B. told the detective and her mother prior to trial, these were presented to the jury. The jury weighed the evidence and judged the credibility of the witnesses resulting in the conviction of defendant. This Court will not reweigh this evidence or judge the credibility of the witnesses.

Defendant also points to the fact that K.B. is shy and has developed at a slower rate. These characteristics were evaluated by the jury and do not automatically render K.B.'s testimony inherently unreliable. Additionally, K.B. evidenced her ability to distinguish between telling the truth and telling a lie at the beginning of her testimony.

Finally, previous molestation does not render a child immune from future molestation; nor do prior incidents render the child victim incredible or otherwise damage her integrity. Any possible confusion on the victim's part between defendant and his brother, as alleged by defendant, was a determination to be made by the jury.

Defendant filed a motion to correct error due to newly discovered evidence and for judgment on the evidence. The trial court held a hearing on this motion and thereafter, denied the motion.

First, as discussed above, there was sufficient evidence to support defendant's convictions. Therefore, the trial court did not err in denying defendant's motion for judgment on the evidence.

To gain a new trial based on newly discovered evidence, the defendant must prove that: 1) the evidence has been discovered since the trial; 2) it is material and relevant; 3) it is not merely cumulative; 4) it is not merely impeaching; 5) it is not privileged or incompetent; 6) due diligence was used to discover it in time for trial; 7) it is worthy of credit; 8) it can be produced on a retrial of the case; and 9) it will probably produce a different result. *Strain v. State* (1990), Ind.App., 560 N.E.2d 1272, 1274. The evidence must be material and decisive and be such as to raise a strong presumption that it will in all probability result in an opposite conclusion in another trial. *Id.* The trial court's denial of defendant's motion will be reversed only for an abuse of discretion. The defendant has the burden of showing that the newly discovered evidence meets the prerequisites for a new trial. *Id.*

In this case, the victim, K.B., testified at the motion to correct error hearing that her father had not done "bad things" to her. K.B. stated that she did not tell the truth at trial. She said that she did not remember the truth nor did she know why she did not tell the truth. However, the State asked her if she had previously told the truth the last time she was in front of the judge and she responded that she had.

K.B.'s mother, Holly, testified that she had not discussed K.B.'s allegations with K.B. prior to or during trial. However, after trial she had spoken to K.B. regarding the allegations and K.B. had told her that her father had not done anything to her. K.B. said that she had made these statements because Patricia had wanted her to say these things. Holly further testified that she was no longer receiving child support payments from defendant and that she was receiving disconnect notices from the utility companies each month. However, she explained that she was able to receive the funds necessary to pay the utility companies from the trustee's office.

Dennis Geisleman, the guardian ad litem for the CHINS proceedings, was contacted after the defendant's trial when K.B. had allegedly told people that her father had not molested her. Geisleman interviewed K.B. and was told by K.B. that she had told the truth at trial.

Tamarin Anglan, K.B.'s counselor, told the court that K.B. had never told her that she did not tell the truth at trial. Anglan admitted that she had never discussed the trial with K.B.

The trial judge listened to the testimony and denied defendant's motion. In rendering his decision, he stated that he was extremely reluctant to substitute his judgment for that of the jury and that he did not think the evidence presented was sufficient to overturn that verdict.

"A recantation, or even an admission of perjury, does not necessarily mandate the grant of a new trial if the introduction of the evidence would not probably result in a different outcome." *Strain, supra.* There was sufficient evidence at trial to convict the defendant. The jury obviously believed K.B.'s testimony that she had been molested by defendant. K.B. did not recant her allegations, even during cross-examination. At trial and prior to trial, K.B. was clearly able to distinguish between the acts committed by her Uncle David and the acts committed by her father. Her doctor acknowledged the possibility of sexual abuse.

It is true that K.B.'s testimony could be impeached at a new trial; however, it would also be subject to rehabilitation, and thus the new testimony would not automatically destroy the State's case. It is important to note that at trial K.B.'s prior inconsistent statements were testified to by K.B. and her mother. The jury, thus, was fully aware of prior inconsistencies in K.B.'s statements, but still found her testimony to be credible. There is no reason to believe that the result would be any different at a new trial. K.B., after recanting her trial testimony to defense counsel, told the State that she had not lied about her trial testimony. Other witnesses at the hearing on the motion to correct error testified that either K.B. had denied lying about the molesting at trial or had never recanted her trial testimony to them. The evidence does not lead to a conclusion that in all probabili-

ty a different result would be reached at a new trial.

In fact, this evidence could be considered merely cumulative of other impeaching evidence that was introduced at trial. Obviously, the jury found the other impeaching evidence to be unconvincing. If newly discovered evidence is merely cumulative or merely impeaching, a new trial is not warranted. The trial court correctly denied defendant's motion.

■ Defendant argues that the State's Instruction No. 2 which read: "The uncorroborated testimony of a victim is sufficient to sustain a conviction for child molesting," should not have been given to the jury. Defendant objected on the grounds that the instruction improperly singled out the testimony of the victim.

This instruction has been acknowledged and approved by the Supreme Court. The jury was instructed in *Hicks v. State* (1989), Ind., 536 N.E.2d 496, 499, that "in Indiana a defendant may be convicted on the uncorroborated testimony of the victim." The *Hicks* defendant alleged that the instruction invaded the province of the jury in that it gave tacit approval of the victim's testimony. The court responded: "So long as the jury was instructed on the elements of the offense charged, the State's burden of proof throughout the case, the presumption of the defendant's innocence, the credibility of the witnesses, and the manner in which the jury was to deliberate to reach a verdict, the instruction about which appellant complains is proper." *Id.*

Likewise, in *Madden v. State* (1990), Ind., 549 N.E.2d 1030, 1033, the defendant argued that a final instruction, which stated that the victim's testimony did not need to be corroborated by other evidence, overemphasized the victim's testimony. The court held:

"It is true that when more than one witness has testified in a case, and especially when their testimony is not consistent one with the other, it is improper for the trial court to comment on or overly emphasize a particular witness's testimony.... [Citation omitted.] However, in

the case at bar, the victim was the only witness to testify concerning the identification of appellant and the acts her [sic] perpetrated upon her.

It is totally unrealistic to take the position that it was necessary for the prosecuting witness's testimony to be corroborated by other evidence. The instruction was a proper instruction.... [Citation omitted.] Inasmuch as the instruction was not repeated in other instructions, we cannot say that it was repetitious or unduly emphasized a particular aspect of the case. [Citation omitted.]"

*Id.*

The instruction in this case was not repeated in other instructions. The jury was instructed on the elements of the offense, the State's burden of proof, the presumption of defendant's innocence, the credibility of the witnesses, and the manner in which the jury was to deliberate to reach a verdict. Therefore, the trial court did not err in giving the instruction.

■ Lastly, defendant claims that the trial court erred in not giving his tendered Instruction No. 1 which read:

"Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the accused throughout the trial of this cause. To overcome the presumption of innocence, the State must prove the Defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.

The defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

You should attempt to fit the evidence to the presumption that the Defendant is innocent.

If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Defendant and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the Defendant's innocence, and reject that which points to his guilt."

The trial court denied this instruction on the grounds that it had been adequately covered by the other instructions. However, defendant claims that none of the instructions specifically covered paragraph number four of the instruction which directed the jury to find in favor of the defendant if the evidence was susceptible of two interpretations, one of which favored his innocence.

This issue was dealt with in *Jones v. State* (1988), Ind., 517 N.E.2d 405, when the defendant claimed error in the judge's denial of his instruction informing the jury that if two conclusions could be reasonably drawn from the evidence, and one of those conclusions favored his innocence, then the jury must find him not guilty. The court held that the trial court did not err in refusing to give the instruction since the substance of the tendered instruction was covered by the court's instruction on the presumption of innocence, the duty to find the facts beyond a reasonable doubt and the absence of burden of proof upon the defendant. The trial court also gave an instruction explaining reasonable doubt and directing the jury to acquit the defendant if after considering all of the evidence it entertained a reasonable doubt of his guilt.

The jury in this case was instructed on the presumption of innocence, the State's burden to prove each essential element of the crime beyond a reasonable doubt, and the absence of burden of proof upon the defendant. The trial court defined reasonable doubt and explained that a vote for a conviction must be refused unless the juror is convinced beyond a reasonable doubt of defendant's guilt. The jury was also instructed that it should attempt to fit the evidence to the presumption that defendant is innocent. These instructions adequately cover defendant's tendered Instruction No. 1.

Affirmed.

GARRARD and BUCHANAN, JJ., concur.