**Steven G. NEWSOME, Appellant– Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A03–9701–CR–25.**

Court of Appeals of Indiana.

Oct. 14, 1997.

Neil E. Holbrook, Goshen, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Steven J. Newsome appeals his conviction by a jury for two counts of Child Molesting, the first count a Class B Felony and the second count a Class C Felony. The first count was based on a charge that Newsome performed cunnilingus on the victim, and the second count was based on the charge that Newsome fondled the victim's vaginal area. Newsome presents three issues for our review:

I.    Whether the trial court properly adjudged the victim, a seven-year-old girl, competent to testify at trial.

II.    Whether there was sufficient credible evidence presented at trial to justify Newsome's conviction for the crime of Child Molesting.

III.    Whether the prosecutor committed misconduct during closing argument.

We affirm.

During August of 1995, Newsome lived in the same household with the victim, a six-year-old girl, and the victim's family. On August 22, 1995, Officer Michael Anglin of the Nappanee City Police Department began investigating allegations that Newsome molested the victim. Later that day, Newsome came to the police station along with Reverend Bill Keene, who had originally reported the molestation, in order to speak with Officer Anglin. After signing an advice of rights form, Newsome admitted fondling the victim's vaginal area, and upon further questioning by Officer Anglin admitted to attempting to perform oral sex on the victim.

At trial, the victim testified that Newsome touched her vagina, on the inside and the outside, with his fingers and with his mouth. The victim was seven years old at the time she testified.

I.

### Witness Competence

Newsome challenges the trial court's determination that the victim, a seven-year-old girl, was competent to testify at trial. In challenging the trial court's competency determination, Newsome argues that no evidence was presented to indicate that the victim understood the difference between the truth and a lie. It appears that Newsome relies on this court's decision in *Casselman v. State*, 582 N.E.2d 432 (Ind.Ct.App.1991). In *Casselman*, this court held that before a child will be deemed competent, it must be established that the child (1) understands the difference between telling a lie and telling the truth, (2) knows she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. *Id.* at 435 (citing *Short v. State*, 564 N.E.2d 553, 556 (Ind.Ct.App.1991)); *see also Russell v. State*, 540 N.E.2d 1222, 1224 (Ind.1989).

The State responds that sufficient evidence was presented to indicate that the victim understands the difference between the truth and a lie, and by noting that under Indiana Rule of Evidence 601 all persons are presumed competent to testify, including children. Appellee's Brief at 9. In light of the State's partial reliance on Ind.Evidence Rule 601 and the trial court's reliance on this rule as a basis for finding the victim's testimony competent,[1] we must first determine what impact, if any, Ind.Evidence Rule 601 has on our previous decisions regarding the competence of children to testify.

The Indiana Rules of Evidence were first made effective in Indiana courts as of January 1, 1994. *See,* INDIANA RULES OF COURT, INDIANA RULES OF EVIDENCE 111 (1997). Ind.Evidence Rule 601 provides: "Every person *is competent* to be a witness except as otherwise provided in these rules or by act of the Indiana General Assembly." Ind.Evidence Rule 601 (emphasis added). This rule is not phrased as a presumption of competence; its literal language requires that all

---

1. In overruling Newsome's objection at trial to the competence of the victim to testify, the judge said, "All witnesses are presumed competent under the new rules." Record at 359.

witnesses be determined competent unless another Indiana Rule of Evidence or an act of the General Assembly provides otherwise. As recently as 1990, Indiana had a statute which presumed that children under the age of 10 were incompetent to testify. IND.CODE § 34–1–14–5 (1988). However, that provision was repealed by the General Assembly. Act of March 27, 1990, Pub.L. 37, § 20, 1990 Ind.Acts 1279–80. Thus, if Ind.Evidence Rule 601 is read literally, children would automatically be deemed competent to testify without the need for determining whether a child understands the nature and significance of her oath. *See,* 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, INDIANA EVIDENCE § 601.101 (2nd ed. 1995). Such a reading of Ind.Evidence Rule 601 would nullify our previous decisions and those of the Indiana Supreme Court which require a trial court to determine that a child knows her obligation to tell the truth, and understands the difference between the truth and a lie, before allowing her to testify. *See, Casselman,* 582 N.E.2d at 435; *Russell,* 540 N.E.2d at 1224.

Because of the relatively recent adoption of the Indiana Rules of Evidence, neither this court nor the Indiana Supreme Court has yet addressed Ind.Evidence Rule 601's impact on witness competency determinations.[2] However, the issue has been considered by several federal courts as it pertains to Federal Evidence Rule 601, which is nearly identical to Indiana's rule.[3] Although most of the federal courts that have considered the issue have done so in the context of witnesses who are alleged to be mentally incompetent, the analysis of Federal Evidence Rule 601's impact on mental competency determinations is analogous to the impact of the rule on child competency determinations since in both cases the issue is whether Rule 601 precludes a court from engaging in any type of competency determination whatsoever.

There is a split in the federal courts regarding the effect of Federal Evidence Rule 601. The majority of federal courts that have considered the issue have held that a trial court still has an obligation to ensure that minimum standards of competency are met before allowing a witness to testify. *See,* 3 WEINSTEIN'S FEDERAL EVIDENCE, § 601.03[1][a], p. 601–9 n. 1. In *United States v. Odom,* 736 F.2d 104 (4th Cir.1984), the Fourth Circuit noted that a district court may prohibit a witness from testifying, even under Rule 601, where the witness does not understand the duty to testify truthfully. *Id.* at 112. In *United States v. Gutman,* 725 F.2d 417 (7th Cir.1984), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 183 (1984), the Seventh Circuit held, "Although insanity . . . is no longer a ground for disqualifying a witness, a district judge has the power, and in an appropriate case the duty, to hold a hearing to determine whether a witness should not be allowed to testify because insanity has made him incapable of testifying in a competent fashion." *Id.* at 420 (citations omitted).

The minority position adheres to a literal interpretation of Federal Evidence Rule 601 under which a trial court may not conduct any inquiry into the competence of witnesses. In *United States v. Roach,* 590 F.2d 181 (5th Cir.1979), the Fifth Circuit held:

. . . under the new Federal Rules of Evidence it is doubtful that mental incompetence would even be grounds for disqualification of a prospective witness. . . . [N]owhere is mental competence mentioned as a possible exception [to Rule 601]. . . . [T]here seems no longer to be any occasion for judicially-ordered psychiatric examinations or competency hearings of witnesses. . . . *Id.* at 185–86.

*See also, United States v. Ramirez,* 871 F.2d 582, 584 (6th Cir.1989), *cert. denied,* 493 U.S.

---

**2.** In *Thornton v. State,* 653 N.E.2d 493 (Ind.Ct. App.1995), we cited Ind.Evidence Rule 601 as well as an Indiana Supreme Court case decided prior to the adoption of Ind.Evidence Rule 601 for the proposition that "a witness is presumed competent" to testify. *Id.* at 497. *Thornton* dealt with the issue of whether the trial court properly determined that a juvenile sex-crime victim who suffered from multiple personality disorder was competent to testify. *Id.* Although

Ind.Evidence Rule 601 was cited, we did not delve into the language of the rule or its impact on our prior decisions involving witness competency determinations.

**3.** "Every person is competent to be a witness except as otherwise provided in these rules. . . ." FED R.EVID. 601.

841, 110 S.Ct. 127, 107 L.Ed.2d 88 (1989) (implying that Federal Evidence Rule 601 precludes any examination of witness competency by the court, although competence may be reviewed under other evidence rules such as Federal Evidence Rule 403 and 603).

Reviewing the purpose behind Federal Evidence Rule 601's seemingly strict language also provides useful insight into the appropriate interpretation of Indiana's rule. A leading commentator on the Federal Rules of Evidence suggests that the purpose of Federal Evidence Rule 601 was to abolish group-based competency distinctions, which provide, for example, that all children under a certain age are unable to testify. 3 WEINSTEIN'S FEDERAL EVIDENCE, § 601.02[1], p. 601–7. Instead of totally prohibiting a certain class of persons from testifying, Federal Evidence Rule 601 allows the jury to hear testimony from witnesses of questionable competence, and it allows the jury to determine the appropriate weight and credibility to give to that evidence. *See* FEDERAL RULES OF EVIDENCE SERVICE, FINDING AIDS, ADVISORY COMMITTEE'S NOTE, RULE 601, Article VI, p. 1 (1987). Although the rule prohibits blanket exclusions of classes of witnesses, it is still desirable for the trial court to make an inquiry into the individual characteristics of a particular witness to ensure that he has a "minimum standard of credibility necessary to permit any reasonable person to put any credence in a witness's testimony." 3 WEINSTEIN'S FEDERAL EVIDENCE, § 601.02[1], p. 601–7; *see also* ADVISORY COMMITTEE'S NOTE, RULE 601 ("The question [of witness capacity] is one particularly suited to the jury as one of weight and credibility, *subject to judicial authority to review the sufficiency of the evidence.*" (emphasis added)).

■ In light of the majority position of the federal courts and the purposes behind Federal Evidence Rule 601—and by implication Ind.Evidence Rule 601—we think the better reading of Ind.Evidence Rule 601 is to require the trial court to continue to conduct an inquiry into witness competency to ensure that minimum standards of competency are met. Thus, we hold that Ind.Evidence Rule 601 does not affect previous Indiana decisions regarding the competence of children to testify. A trial court will still be required to conduct the inquiry set out in *Casselman,* 582 N.E.2d at 435—whether the child (1) understands the difference between telling a lie and telling the truth, (2) knows she is under a compulsion to tell the truth, and (3) knows what a true statement actually is.

The concurrence disagrees with our conclusion that Ind.Evidence Rule 601 does not affect previous Indiana decisions which require a trial court to conduct a preliminary inquiry into the competence of children prior to allowing them to testify. The concurrence argues that the adoption of Ind.Evidence Rule 601 and the repeal of a statute which presumed that children under the age of 10 were incompetent,[4] together, abolish a trial court's obligation to conduct an inquiry into a child's competence prior to allowing him to testify. Under the concurrence's interpretation, a party who opposes the testimony of a witness may challenge the witness' competency, but the opposing party now bears the burden of proving the witness' incompetence. Such an interpretation does not comport with either the language of Ind.Evidence Rule 601 or the holdings of this court which followed the repeal of the child incompetency presumption. *See Casselman,* 582 N.E.2d at 435.

■ The concurrence insists that Ind.Evidence Rule 601 "explicitly presumes [witness] competency." It does not. As noted earlier, Ind.Evidence Rule 601 provides that "[e]very person *is competent* to be a witness" unless another rule of evidence or an act of the general assembly provides otherwise. Ind.Evidence Rule 601 (emphasis added). This explicit language does not create the burden-shifting presumption envisioned by the concurrence which would allow a party opposing the witness to overcome this presumption by proving the witness' incompetence.[5] If read literally, the rule would

---

4. *See* IC 34–1–14–5 (1988).

5. As we indicated in note 2, *supra,* this court cited Ind.Evidence Rule 601 in *Thornton v. State,* 653 N.E.2d 493 (Ind.Ct.App.1995), for the proposition that "a witness is presumed competent to testify." *Id.* at 497. The court in *Thornton* provided no explanation for this reading of Rule

require trial courts to accept the testimony of every single witness, regardless of their demonstrated incompetence, unless another statute or rule indicates that a particular witness or class of witnesses is incompetent. *See* 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, INDIANA EVIDENCE § 601.101 (2nd ed.1995).

■ Such a reading of Ind.Evidence Rule 601 would be untenable, and we agree with a majority of the federal courts which have held that the rule does not prohibit a trial court from conducting a preliminary inquiry into witness competency. Further, since neither our case law nor the language of Ind.Evidence Rule 601 have anything to do with a presumption, we reject the concurrence's insertion of a presumption into the rule.

The concurrence also contends that the repeal, in 1990, of the second subsection of IC 34–1–14–5, which presumed children under the age of 10 to be incompetent, signaled an intent by the legislature to alter the need for the proponent of a witness to lay a very specific foundation establishing competency. Our holding in *Casselman,* decided shortly after this provision's repeal, does not support the concurrence's contention. The court stated in *Casselman:*

> In [1990] ... the legislature amended the section of IC 34–1–14–5 which had created the incompetency presumption by deleting it from the statute. Now, all children, regardless of age, are presumed competent to testify. However, *a child must still demonstrate to the court he has the knowledge required by the Russell court before competency is established....*

*Casselman,* 582 N.E.2d at 435 (citations omitted) (emphasis added). The *Russell* court required the record to show that "the child witness understood the difference between telling the truth and telling a lie, knew he was under compulsion to tell the truth, and knew what a true statement actually was." *Id.* (citing *Russell,* 540 N.E.2d at

1224). Thus, even after the repeal of the statutory presumption of incompetence, this court required a trial court to conduct the same minimal competence inquiry which was used prior to the presumption's repeal.

■ We now turn to the defendant's primary contention: that there was insufficient evidence presented to show that the victim understood the difference between the truth and a lie. It is within the sound discretion of the trial court to determine whether a child is competent to testify based upon the judge's observation of the child's demeanor and responses to questions posed to her by counsel and the court. *Casselman,* 582 N.E.2d at 435. A trial court's determination that a child is competent will only be reversed for an abuse of discretion. *Id.*

■ The record in the instant case shows the following examination of the victim:

QUESTIONS BY THE PROSECUTOR

&ast; &ast; &ast; &ast; &ast; &ast;

Q Do you know the difference between the truth and a lie?

A Yes.

Q Okay. What happens if you tell a lie?

A You get spanked and you stand in the corner.

Q Okay. Spanked and stood in the corner? Is that what your mom and dad do?

A Yes.

Q Okay. What happens if you tell the truth?

A Nothing.

&ast; &ast; &ast; &ast; &ast; &ast;

Record at 357.

Based upon this exchange, the prosecutor failed to lay a proper foundation for the competency of this witness. Although the victim testified that she knew the difference between the truth and a lie, there is nothing which indicates that she truly understands what that difference is. In *Russell v. State,*

---

601. We note that the court also cited *Bellmore v. State,* 602 N.E.2d 111, 117 (Ind.1992), *reh. denied,* for the same proposition and that *Bellmore* was decided prior to the adoption of the Indiana Rules of Evidence. Under these circum-

stances, we do not believe *Thornton* can be considered adequate precedent for the proposition that the language of Ind.Evidence Rule 601 requires all witnesses to be "presumed," in the burden shifting sense, competent.

540 N.E.2d 1222 (Ind.1989), the supreme court held:

> ... a child, in order to know the nature of an oath, must, in addition to appreciating the moral content of true and false statements, know what a true statement actually is.... [F]or this additional requirement to be satisfied, more than making a flat statement like 'I know what the truth is' would be required of a small child. For in the case of a small child, the term "truth" may have many connotations, including simply what parents or other persons in authority may say. *Id.* at 1224.

The court went on to note that this could be accomplished by asking the child to give an example of someone telling a lie. *Id.* at 1225.

It is not enough for a child witness to simply indicate that she will be punished for telling a lie, as the victim did in the present case. Although the supreme court in *Baxter v. State,* 522 N.E.2d 362 (Ind.1988), *reh. denied,* indicated that such information would be of value in determining whether a child understood the difference between the truth and a lie, the children in the *Baxter* case also offered clear examples of truth and falsehood in addition to knowing that they would be punished for lying. *Id.* at 370. Since the victim in this case was not asked to give any type of example or other testimony indicating that she actually understood the difference between the truth and a lie, it was an abuse of discretion for the trial court to qualify her as a witness.

Only when the abuse of discretion affects the substantial right of a party or is inconsistent with substantial justice is reversal warranted. Ind. Trial Rule 61. In *Russell v. State,* 540 N.E.2d 1222 (Ind.1989), our supreme court held that the trial court's decision to allow a child to testify without adequately determining whether the child knew the difference between the truth and a lie was harmless where the child demonstrated during subsequent questioning that she in fact understood the difference. *Id.* at 1225. As long as the witness provided the court an "ample basis for inferring that she knew that a true statement is one which comports with fact and reality," the failure to discover this

prior to allowing the child to testify is harmless error. *Id.*

■ The victim in the present case was subjected to vigorous cross-examination by the defense. Newsome's counsel asked the victim about her conversation, prior to trial, with an investigator from the Children and Family Advocacy Center. Record at 375. The victim testified that she told the investigator that Newsome touched her privates with his mouth. Record at 376–77. Counsel then played a videotape of the victim's conversation with the investigator, which showed that the victim did not tell the investigator that Newsome touched her with his mouth. Record at 385. The victim then admitted that she did not tell the investigator about Newsome orally touching her privates. Record at 386. However, she continued to maintain that Newsome did in fact touch her privates with his mouth. *Id.*

It can be inferred from this exchange that she understood that a true statement is one that comports with fact and reality. Upon being shown the videotape, which indicated that her earlier testimony was incorrect, the victim admitted that she did not tell the advocacy center investigator that Newsome touched her privates with his mouth. Her admission regarding the videotape, and her consistent testimony during rigorous cross-examination that Newsome in fact touched her privates orally, are enough to infer that she understood the difference between the truth and a lie. Therefore, the failure of the prosecutor to adequately question her was harmless error.

## II.

### *Sufficiency of the Evidence*

Newsome contends that there was insufficient evidence presented at trial to support his conviction. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh. denied.* We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which a jury could

find the defendant guilty beyond a reasonable doubt. *Id.*

■ The victim testified that Newsome abused her by touching her vagina with his fingers and with his mouth. Testimony from the victim alone is sufficient to sustain a conviction. *Griffin v. State,* 583 N.E.2d 191, 193 (Ind.Ct.App.1991), *reh. denied,* (citing *Gonzales v. State,* 530 N.E.2d 739, 740–41 (Ind.1988)). The victim's testimony was also corroborated by Officer Anglin's testimony regarding Newsome's admissions at the police station. Accordingly, the State presented sufficient evidence from which a jury could conclude that Newsome was guilty beyond a reasonable doubt.

Newsome also contends that the victim lacks credibility because she testified that she told an investigator that Newsome touched her privates with his mouth, when in fact a videotape of the conversation revealed she had not. The victim later admitted during cross-examination that she did not tell the caseworker that Newsome touched her orally. Newsome argues that this lack of credibility, along with her youth, make her testimony inherently unbelievable.

■ A conviction may stand on the uncorroborated evidence of a minor witness. *Nelson v. State,* 525 N.E.2d 296, 297 (Ind.1988). We will not "impinge on the jury's responsibility to assess credibility and weigh evidence, unless this Court is confronted with inherently improbable testimony, or equivocal, wholly uncorroborated testimony of incredible dubiosity." *Becker v. State,* 585 N.E.2d 279, 281 (Ind.Ct.App.1992) (citing *Bedwell v. State,* 481 N.E.2d 1090 (Ind. 1985)). In *Becker,* we refused to find that a child's testimony was inherently improbable or incredibly dubious where the witness had given some inconsistent statements prior to trial. *Id.* These inconsistencies were brought out by the defense at trial and presented to the jury. *Id.* Just as in *Becker,* the fact that the victim in the present case may have made inconsistent statements does not make her testimony at trial inherently improbable or incredibly dubious. It is the jury's function to judge the victim's credibility based in part on these inconsistent statements, and we will not conclude that the victim's testimony was insufficiently credible to support a conviction.

### III.

### *Prosecutorial Misconduct*

Newsome contends that the prosecutor committed misconduct during closing argument and rebuttal by making several improper remarks. In reviewing a claim of prosecutorial misconduct, we must first determine whether the prosecutor's conduct was improper. *Zenthofer v. State,* 613 N.E.2d 31, 34 (Ind.1993). If we determine the conduct was improper, we must then determine whether under all the circumstances the prosecutor's misconduct placed the defendant in a position of grave peril. *Id.* In deciding whether the defendant was placed in grave peril, we consider the probable persuasive effect of the misconduct on the jury's decision. *Id.*

■ The first comment Newsome objects to is, "So, you heard Mr. Newsome's side of the story through Officer Anglin and Mr. Newsome's story is yeah, I fondled her mostly in the vagina area and I performed oral sex on her as well." Record at 421. Newsome objected to this statement during the trial on the grounds that it misstated Officer Anglin's testimony. Record at 421–22. In light of this objection, the prosecutor rephrased his comment and said, "As I recall the officer's testimony ... he said did you ever *try* to do anything oral with her. [Newsome] says yes, or yeah." Record at 422 (emphasis added).

Newsome argues that this summarization of Officer Anglin's testimony is incorrect because the officer did not testify on direct examination that Newsome admitted performing cunnilingus on the victim. According to Newsome, Officer Anglin only testified that Newsome admitted an attempt to perform cunnilingus on the victim. Assuming *arguendo* that this is a correct interpretation of Officer Anglin's testimony and that the prosecutor's first attempt at summarizing this testimony was incorrect, any confusion was dispelled by the prosecutor's restatement after Newsome's objection during clos-

ing argument. In any event, the prosecutor's comment did not subject Newsome to grave peril since it is improbable that it had a persuasive effect on the jury. *Zenthofer*, 613 N.E.2d at 34.

■ Newsome also argues that the prosecutor's comment about Officer Anglin's testimony is improper because it implies superior knowledge of the case. Newsome relies on the Indiana Supreme Court's holding in *Kocher v. State*, 270 Ind. 661, 389 N.E.2d 18 (1979), *reh. denied*, for the proposition that a prosecutor may not express an opinion which implies that her opinion is based upon information to which the jury is not privy. *Id.* at 20. The prosecutor's comment on Officer Anglin's testimony does not imply that the prosecutor has knowledge of evidence which was not presented at trial. It is simply a summary of Officer Anglin's testimony and a comment on that evidence, which is permissible. *See, Jarrett v. State*, 580 N.E.2d 245, 250 (Ind.Ct.App.1991), *trans. denied*.

The second comment Newsome claims was improper is the following: "Certainly there's no evidence that would suggest that [Officer Anglin] did anything inappropriate as is sometimes raised by defense counsel in connection with statements that are voluntary." Record at 422–23. Newsome argues that this statement was improper because it implies that the "defense counsel's job is to get his client off by bringing out insignificant facts and legal technicalities." Appellant's Brief at 10.

"[A] defendant waives possible error concerning the prosecutor's closing argument where he fails to object to the argument at trial." *Zenthofer*, 613 N.E.2d at 34. Since Newsome failed to object to this comment at trial, he has waived the issue on appeal. Accordingly, we need not decide whether the comment was improper.

■ The third remark cited by Newsome as improper was, "there's so much smoke in front of you that I can't hardly see you." Record at 439–40. He argues that this comment and another comment where the prosecutor called a defense argument "baloney" (Record at 441) were abusive statements to-

ward defense counsel which were, in turn, prejudicial to the defendant.

Any objection to the "baloney" comment is waived since Newsome did not object to it at trial. *Zenthofer*, 613 N.E.2d at 34. With respect to the "smoke" comment, this statement was not abusive towards defense counsel. Rather, it was merely a request for the jury to focus on the State's evidence. The remark was not improper.

■ Finally, Newsome argues that the prosecutor improperly commented on the defendant's failure to testify at trial. He cites the following comments in support of this contention:

> You heard this officer get up and say [Newsome] came in with his reverend, with his minister. We filled out forms. [Newsome] didn't know what he was doing or [Newsome] had some problems understanding what was going on? He'd be the first one crying for an attorney. Record at 441; and ... there certainly has been no evidence to suggest that [Newsome was not in his right state of mind when he gave his statement to Officer Anglin.] There's not a mental disease or defect defense here. You've heard no psychological evidence. Record at 442–43.

"The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State*, 669 N.E.2d 733, 739 (Ind.1996), *reh. denied*. Neither of the remarks complained of by Newsome were improper under this standard.

The first remark was simply a rebuttal of Newsome's argument that his statement to Officer Anglin was not voluntarily made. It does not refer either directly or indirectly to Newsome's refusal to testify at trial and no reasonable jury could have interpreted this comment as an invitation to infer Newsome's guilt from his silence.

■ Neither was the second remark an improper reference to Newsome's refusal to testify. One of Newsome's primary contentions during his closing argument was that

his statement to the police was made under circumstances which indicate that it was not credible.[6] *See,* Record at 431–33. It was proper argument for the prosecutor to rebut that contention by pointing out that no psychological evidence concerning Newsome's mental state was presented. In *Harper v. State,* 474 N.E.2d 508 (Ind.1985), the Indiana Supreme Court held that a prosecutor's comment was not improper where it was addressed, in its totality, not to the defendant's failure to testify but to the defendant's failure to present evidence to substantiate a claim that his victim was emotionally unbalanced at the time of the alleged crime. *Id.* at 511. Furthermore, no reasonable jury could have interpreted the prosecutor's comment, taken in the context of rebutting a defense argument that Newsome's statement to the police lacked credibility, as inviting an inference of Newsome's guilt based upon his failure to testify at trial. *Moore,* 669 N.E.2d at 739. Therefore, we find the prosecutor's comments not to have been improper.

Affirmed.

ROBERTSON, J., concurs.

HOFFMAN, J., concurs in result with separate opinion.

HOFFMAN, Judge, concurring in result.

Although I concur in the result, I respectfully dissent from the majority's examination of the issue as to the competency of the witness. Ind.Evidence Rule 601 does presume that all witnesses are competent. *Thornton v. State,* 653 N.E.2d 493, 497 (Ind. Ct.App.1995). The onus is upon a defendant to establish that a witness is not competent. *Id.* A determination as to a witness's competency lies within the sound discretion of the trial court and is reviewable only for a manifest abuse of that discretion. *Id.*

The majority opinion assumes that Evid.R. 601 cannot be read literally; thus, the analysis under the repealed portion of the witness competency statute is appropriate. Such is not the case.

Under the majority's study of the issue, the legislature has changed a specific portion of the statute on competency of witnesses and the supreme court has adopted a new rule regarding the competency of witnesses all without altering the law. It does not follow that our legislative body enrolled an act and our highest judicial body adopted a rule all to leave the law static. The statutory modification and the rule adoption *a priori* changed the law.

IND.CODE § 34-1-14-5 (1993 Ed.) provides that certain "persons shall not be competent witnesses." In its current form the statute sets out those who have received confidential communications including attorneys, physicians, members of the clergy and husbands and wives, as well as insane persons, as those who are not competent witnesses. As noted by the majority, until its repeal in 1990, the second subdivision of the statute presumed incompetency of: "Children under ten (10) years of age, unless it appears that they understand the nature and obligation of an oath."

By its repeal of the section regarding children, the legislature removed the presumption of incompetency. Evid.R. 601, as adopted by our supreme court, would still allow the legislature to retain the presumption of incompetency; however, the legislature has not recodified the section or a similar provision. Thus, the deletion of the presumptive incompetency of children represents a change in the law. *See Joe v. Lebow,* 670 N.E.2d 9, 19 (Ind.Ct.App.1996). In determining whether the legislature intended courts to retain the interpretations developed through common law once a statute was revised, this Court noted:

> When a statute contains language which is deleted by the legislature, we presume that the legislature intended the deletion to represent a change in the law. We cannot simply 're-read' into a statute lan-

---

**6.** Newsome's attorney said the following during closing argument, "In determining the weight to be given to a defendant's statement, you should consider all circumstances under which it is made. . . . Now I would suggest to you that Mr.

Newsome was not in the right frame of mind. He was not in the proper state of mind in order to give a proper statement in order to say what may or may not have happened." Record at 433.

guage which has been deleted. [Citations omitted.]

*Id.*

Further, the majority's analysis breaks down under pragmatic scrutiny. The rule's failure to presumptively exclude children does not prohibit special inquiry into their competency prior to testifying when the issue is raised by a defendant. The rule, read in conjunction with the repeal of the subdivision regarding children in the witness competency statute, abandoned the previous arbitrary lines drawn regarding age, in favor of a rule which assumes competency until otherwise demonstrated by the opponent of the testimony.

The majority's investigation of the issue is patently incorrect. It concludes that by repealing the former provision presuming incompetency and instituting a rule which presumes competency neither the legislature nor the supreme court signaled an intent to alter the need for a proponent of the witness to lay a very specific foundation establishing competency. First, the majority engrafts upon Evid.R. 601 the abandoned burden requiring the proponent of a witness to establish a level of that witness's competency, then the majority concludes that only the very specific inquiry which evolved under the now repealed portion of the statute will satisfy that burden. The majority opinion wholly fails to recognize any change after repeal of the provision and adoption of the rules of evidence.

The old rule, statutory provision and analysis have been abolished. The new rule explicitly presumes competency. Once the new rule was adopted, it unquestionably superseded the old rule and the inquiry which the old rule spawned. The majority's steadfast refusal to recognize the rule change results in a faulty analysis of the competency issue in the present case.

The end result underscores the problem. After determining that a foundation must be laid and was not precisely met here, the majority concludes that the witness's further testimony revealed that she, in fact, understood the difference between telling the truth and telling a lie, so the initial error in allowing the testimony is harmless. Adherence to the old analysis, which clearly has been abandoned, will cause confusion to the bench and bar in Indiana. Under the new rule, a child is a competent witness unless the opponent of the testimony raises the issue and demonstrates incompetency.

Here, the colloquy between the prosecutor and the witness revealed that the witness understood a distinction between truth and falsehood. The witness was able to articulate an unpleasant consequence for telling a lie. When properly reviewed for a manifest abuse of discretion, *see Thornton*, 653 N.E.2d at 497, it is apparent that Newsome did not establish the witness's incompetency, and the trial court's finding as to competency must be affirmed on that basis.