Kelly SMITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0110–CR–657.

Court of Appeals of Indiana.

Nov. 27, 2002.

Transfer Denied Feb. 20, 2003.

Kathleen M. Sweeney, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott A. Kreider, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kelly Smith appeals from his conviction of Child Molesting, as a Class A felony, following a bench trial. Smith presents the following restated issues for our review:

1. Whether there was sufficient evidence to support his conviction.

2. Whether the trial court erred when it imposed certain conditions of probation.

We affirm but remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Smith, his wife Charisse, and their daughter lived with Charisse's sister, Eddra Douglas, Douglas's daughter, and six-year-old V.D. V.D.'s mother ("Mother"), a sister of Charisse and Douglas, was incarcerated at all times relevant to this appeal. On November 11, 1999, Mother was speaking to V.D. on the telephone when V.D. disclosed that Smith had molested her at some point in the preceding eleven days. V.D. stated that Smith picked her up from school, took her home, and told her to lay down and take a nap. Smith removed V.D.'s pants and asked her to lower her underwear. When she hesitated, he offered to give her candy if she would comply. After she did as he directed, Smith told her to lay face-down on the bed. He then "put his private in [her] private," and he ejaculated on V.D.'s "private" and on the bed. A medical examination performed on V.D. several days later revealed no physical evidence of sexual activity. Smith was charged and convicted as set out above following a bench trial.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

■ Smith contends that the State presented insufficient evidence to sustain his conviction. Specifically, he maintains that V.D.'s testimony, without more, is insufficient evidence to show that penetration occurred. He asks us to invoke the "incredible dubiosity rule," which allows this court to reverse the trial court when " 'a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt.' " *Jackson v. State*, 709 N.E.2d 326, 330 (Ind.1999) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)).

■ In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of witnesses. *Ferrell v. State*, 746 N.E.2d 48, 50 (Ind.2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the judgment and will affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

The charging information alleged that Smith committed child molesting, as a Class A felony, pursuant to Indiana Code Section 35–42–4–3. The information did not specify which subsection of the child molesting statute provided the basis of the charge against Smith. However, the information charged Smith with a Class A felony for performing sexual intercourse upon V.D. That offense is defined in subsection (a) of Indiana Code Section 35–42–4–3. "Sexual intercourse" is defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35–41–1–26 (West 1998). Thus, the State was required to prove penetration in order to obtain a conviction for child molesting as a Class A felony as charged.

Smith contends that V.D.'s testimony is incredibly dubious for the following reasons: V.D.'s allegation was the result of her mother's coercion; V.D. told different versions of events to her treating physician, her mother, and a police detective; and V.D.'s statements indicate she was confused about what actually occurred, claiming it never happened, it happened only once, and it happened all the time.

The State introduced into evidence V.D.'s videotaped statement to Jenny Hoffman, a child interviewer for the Family Advocacy Center. V.D. was six years old at the time of the interview. Hoffman

first asked V.D. to point to her "private places." In response, V.D. pointed to her lap and stated "right there." When Hoffman asked V.D. what she used that part of her body for, V.D. said "to use it." Hoffman then asked V.D. whether anyone had ever touched her there, and V.D. responded that Smith had touched her there, but that "he hasn't been touching it for a long day. . . . He didn't touch it for a long, long, long time." But then V.D. stated, "Well this one day, one day he did touch it."

V.D. proceeded to explain that Smith picked her up from school one day, took her home, and told her to take a nap. When she was lying on his bed, he told her to take her pants off. He offered her some candy, and then he pulled her underwear down. Then V.D. stated, "then he, uh, put his private in my private." Hoffman then asked, "Then what happened?" And V.D. responded "That's all." But after a few more questions, V.D. described that Smith's "private was wet" and that the wetness came from "in his private." V.D. also stated that "he got me wet . . . . on my private."

Hoffman then asked V.D. whether Smith's private was pointing up or down, and V.D. responded "Up." Then Hoffman asked V.D., "Did he put [his penis] on the outside of your private or did he put it on the inside of your private?" And V.D. responded "Straight." When Hoffman told V.D. that she did not understand what she meant by that response, V.D. stated "He did it straight, straight." Then Hoffman asked V.D. whether Smith had ever touched any other parts of her body with his private, and V.D. responded "On the sides and straight." But V.D. could not explain what she meant by that description. When Hoffman asked V.D. what it felt like, V.D. responded that it did not feel good. Finally, V.D. described the "wetness" as being white.

 It is well settled that a conviction may stand on the uncorroborated testimony of a minor witness. *Newsome v. State,* 686 N.E.2d 868, 875 (Ind.Ct.App.1997). Moreover, a conviction for child molesting will be sustained when it is apparent from the circumstances and the victim's limited vocabulary that the victim described an act which involved penetration of the sex organ. *Scott v. State,* 771 N.E.2d 718, 724 (Ind.Ct.App.2002), *trans. denied.* The unfamiliarity of a young victim with anatomical terms does not make her incompetent to testify when the facts are explained in simple or childlike language which the judge and jury can understand. *Id.* Also, a detailed anatomical description of penetration is unnecessary. *Id.* Proof of the slightest penetration is sufficient to sustain convictions for child molesting. *Id.* Indeed, our statute defining sexual intercourse does not require that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated. *Short v. State,* 564 N.E.2d 553, 559 (Ind.Ct.App.1991).

 The fact that V.D. may have made inconsistent statements does not make her testimony at trial inherently improbable or incredibly dubious. *See Newsome,* 686 N.E.2d at 875 (holding victim's testimony sufficiently credible to support conviction despite inconsistency regarding what victim told investigator); *see also Becker v. State,* 585 N.E.2d 279, 281 (Ind.Ct.App. 1992). It is the function of a trier of fact to judge the victim's credibility based in part on those inconsistent statements, and we will not conclude that V.D.'s testimony was insufficiently credible to support a conviction. *See Newsome,* 686 N.E.2d at 875. Further, Smith has not demonstrated that V.D.'s testimony was the result of coercion. The "incredible dubiosity rule" does not apply in this case.

In *Scott v. State*, 771 N.E.2d 718 (Ind. Ct.App.2002), *trans. denied*, the defendant allegedly penetrated K.L.S.'s sex organ with his finger. K.L.S. was eight and nine years old during the two-year period of molestation. At trial, during direct examination of K.L.S., the following colloquy took place:

Q When he put his hands down your pants[,] what part of your body did he touch then?

A My private.

Q Your private. And so everybody is on the same page and we all know what you mean, what do you do with your private?

A Use the restroom.

Q [K.L.S.], when your dad put his hands in your pants and touched your private, did he ever put anything in your private?

A Yes.

Q What?

A His finger.

*Id.* at 724. In assessing the sufficiency of the evidence on the issue of penetration, this court concluded, "Upon testifying that Scott inserted his finger into her 'private,' and that she used her 'private' to go to the restroom, K.L.S. provided information upon which the jury could determine that Scott had inserted his finger into her external genitalia." *Id.* at 725.

In this case, V.D. was only six years old at the time she was asked to describe the alleged molestation. At the beginning of the interview, V.D. unequivocally stated that Smith "put his private in my private." Later, when asked to explain whether Smith put his private on the outside or inside of her private, V.D. gave a seemingly inappropriate response. But, as we have already noted, a detailed anatomical description of penetration is unnecessary. *Id.* at 724. And while the interviewer was confused by V.D.'s statement that Smith "did it straight," a reasonable inference can be made that either V.D. did not understand the question or that her lack of a sexual vocabulary prevented her from giving a response that an adult could understand. *See Short*, 564 N.E.2d at 559 (noting six-year-old victim's limited vocabulary regarding sex organs and sexual matters should not provide "a shield for criminal wrongdoing.")

The balance between understanding what quite young children are telling us and ensuring that convictions are based on sufficient evidence is not easy to achieve. At least to some extent, concluding what a child is communicating is a matter of weighing the evidence. This we cannot do on appeal. While some of V.D.'s statements might be confusing, her other statements adequately describe an act of sexual intercourse. V.D. stated that she had wetness, which she later described as white, *on* her private. This description of ejaculate on her private, combined with her description of Smith's erection and her statement that it did "not [feel] good" when Smith put his private in her private, supports the trial court's determination that penetration of at least V.D.'s external genitalia occurred.

Finally, the State presented expert testimony that a complete lack of physical evidence of penetration, as in this case, is consistent with an allegation of penetration of the female sex organ. Indeed, that expert testified that "75% of children who have been molested with penetration have a normal physical examination[.]" Transcript at 76. We conclude that the State presented sufficient evidence to support Smith's conviction.

### Issue Two: Conditions of Probation

Smith next contends that the trial court erred in imposing conditions of probation that "restrict Mr. Smith's constitutional

rights and are unrelated to rehabilitation and or public safety." Those conditions include: (1) Smith may never be alone or have contact with any person under eighteen years of age unless first approved by Smith's sex-offense counselor and the probation department; (2) Smith may not participate in activities that involve children under the age of eighteen, such as Boy Scouts and Girl Scouts; (3) Smith may not possess any pornographic or sexually explicit materials; (4) Smith may not use any computer or have access to any online computer services at any location; and (5) Smith must notify his probation officer of a dating, intimate, or sexual relationship.

 A trial court enjoys broad discretion when determining the appropriate conditions of probation. *Freije v. State*, 709 N.E.2d 323, 324 (Ind.1999). This discretion is limited only by the principle that the conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety. *Carswell v. State*, 721 N.E.2d 1255, 1258 (Ind. Ct.App.1999). Where, as here, the defendant challenges a probationary condition on the basis that it is unduly intrusive on a constitutional right, we will evaluate that claim by balancing the following factors: (1) The purpose to be served by probation, (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be enjoyed by probationers, and (3) the legitimate needs of law enforcement.

 This court has observed that child molesters molest children to whom they have access. *See id.* at 1259. The evidence demonstrates that this is true in Smith's case. In such situations, probation conditions that reduce the potential for access to children are reasonable. *Id.* Therefore, preventing Smith from being alone with children under eighteen years of age and from participating in activities involving children under eighteen will cer-

tainly reduce such access. Those two conditions are protective measures for children and, in addition, will assist Smith in his rehabilitation. *See id.*

 Smith also challenges the condition of probation that he must notify his probation officer of a dating, intimate, or sexual relationship. We note first that Smith is not prohibited from establishing and maintaining relationships with adults. Rather, he is merely required to report such activity. We conclude that this requirement is reasonably related to the goal of protecting children. It is not uncommon that child molesters gain access to their victims through romantic relationships with adult relatives of the child. In fact, such occurred in the instant case. If Smith is required to report romantic relationships, it will enable the probation department to investigate the situation and determine whether there is a risk that children might thereby be exposed to contact with Smith. The trial court did not err in imposing this condition.

The trial court ordered that Smith is forbidden from possessing pornographic or sexually explicit materials while he is on probation. Smith complains that the boundaries of this restriction are overly vague, and therefore that he does not know what is forbidden. He also complains that preventing him from viewing sexually explicit adult material is a violation of his First Amendment rights.

 With respect to Smith's argument that this condition impermissibly infringes upon a constitutional right, we reiterate that such rights may be restricted or denied altogether if the balancing of factors indicates it is warranted. *See also U.S. v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) (stating that probationer does not have unqualified First Amendment right to "sexually stimulating or sexually oriented

materials"). Although there is no evidence that Smith's offense directly involved sexually explicit material, it cannot be denied that sexual arousal is one of the possible effects of viewing such material. We do not know whether Smith's arousal from such a source would ultimately endanger another child, but the possibility does not strike us as so remote as to render this condition improper. Moreover, restricting exposure to a potential source of temptation would, in all probability, aid in Smith's rehabilitation.

■ But we agree with Smith that this particular condition of probation is unreasonably vague. A probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison. *U.S. v. Guagliardo*, 278 F.3d 868, 872 (9th Cir.2002) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). And the Third Circuit Court of Appeals has held that a blanket prohibition on "pornography" is unclear and unconstitutionally vague. *U.S. v. Loy*, 237 F.3d 251, 267 (3rd Cir.2001). But the court in *Loy* stated that the lower court "could, perfectly consonant with the Constitution, restrict Loy's access to sexually oriented materials, so long as that restriction was set forth with sufficient clarity and with a nexus to the goals of supervised release." *Id.* The Third Circuit suggested that the restriction might clarify "whether it extended to non-visual materials, or [might borrow] applicable language from the federal statutory definition of child pornography located at 18 U.S.C. § 2256(8)." *Id.*

■ Likewise, here, we remand to the trial court with instructions to set out any prohibition against "pornographic or sexually explicit materials" with more specificity. The definition of "child pornography"

found in the federal statute might be a useful tool in this endeavor. *See* 18 U.S.C. § 2256(8). And the trial court might prohibit Smith from possessing any materials that fall under the definition of "obscene matter." *See* Ind.Code § 35–49–2–1. But whatever the court decides, the condition should be narrowly tailored to the goals of protecting the public and promoting Smith's rehabilitation. *See Loy*, 237 F.3d at 264.

■ Finally, Smith maintains that the condition of probation prohibiting his use of a computer violates his First Amendment rights. But Smith does not cite to any authority in support of this contention, and we are not aware of any such authority. It is clear from context that the condition that Smith may not use any computer or have access to any online computer services is intended to prevent Smith from viewing prohibited materials. Accessing prohibited material, such as child pornography, is easily accomplished with a computer, and for that reason computer access would provide a temptation of such a magnitude that exposure to it would not be in the best interests of Smith's rehabilitation. The trial court did not err in restricting Smith's access to computers and online computer services during his probation.

Affirmed but remanded with instructions.

SHARPNACK, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I agree with the majority in all matters except one: I do not believe there was sufficient evidence to prove penetration. Accordingly, I would affirm Smith's conviction for child molesting, but would reduce it from a class A to a class C felony.

The majority has ably set out the law that guides us in reviewing child molesting convictions. I stress especially that I share the majority's view concerning the considerations peculiar to reviewing the testimony of a young child. It goes without saying that the ability to communicate develops with age, and therefore that extreme youth is generally attended by a limited ability to express oneself. In fact, it is for this reason that the legislature has codified what can only be characterized as a relaxation of the rules of evidence that apply in most other circumstances. One such statute, Ind.Code Ann. § 35-37-4-6 (West 1998), provided the means by which the interview conducted by Hoffman was admitted into evidence. I believe the only arguable evidence of penetration was contained in that interview.

Before I discuss the substance of Hoffman's interview with V.D. on the issue of penetration, I wish to express my view that the circumstantial evidence of penetration in this case is practically nonexistent. There were no soiled clothing, towels, or bed sheets tending to prove that V.D. was penetrated. V.D.'s body did not display signs of penetration. That is to say, a medical examination of V.D. shortly after the alleged molestation revealed no evidence of molestation, let alone penetration. I am aware that such does not prove that V.D. was not penetrated. I think it is stretching the point too far, however, to characterize this as "consistent with an allegation of penetration of female sex organs." *Op.* at 116. At most, it is not *inconsistent* with penetration. This is not merely an exercise in semantics. The distinction between "consistent with" penetration and "not inconsistent with" penetration is significant here in view of the allocation of the burden of proof. Surely it cannot be said to help the State's case that there was no physical indication of pen-

etration. In short, I do not view that as proof of anything.

Lacking any circumstantial evidence of penetration, proof of penetration in this case rests entirely upon the substance of V.D.'s accounts of what occurred. The majority finds such proof in V.D.'s interview with Hoffman. I do not. It is clear from V.D.'s account of the occurrence that Smith molested her. This was amply proven by V.D.'s statements that Smith coaxed her into removing her pants, lowered her underwear, and then instructed her to lay face-down on the bed. After that, according to V.D., Smith removed his own pants and rubbed against V.D. from behind until he ejaculated. I agree with my colleagues that the foregoing chronology of events was adequately proven by V.D.'s statements during the interview. That information was sufficient by itself to support a conviction for child molesting as a class C felony, but proof of penetration is required to elevate the conviction to a class A felony. The majority concludes that such may reasonably be inferred from the foregoing and other statements made by V.D. For instance, the fact that ejaculate was found "on her private" is cited as supporting an inference of penetration. I note that V.D. stated that ejaculate was found also on the bed. I do not intend to be flip by observing that no one has suggested that Smith penetrated the bed. By this I mean to make the point that, based upon Smith's position relative to V.D. at the time of ejaculation, the force of gravity would have caused fluid to settle in those places so long as ejaculation occurred above them. I cannot agree that the location of ejaculate on V.D.'s body provided adequate circumstantial evidence of penetration, especially in light of her description of what occurred.

This brings me to what in my opinion is the only arguable evidence of penetration.

Lacking any circumstantial evidence of penetration, we must rely on V.D.'s account of the molestation to determine whether her genitals were penetrated. I have culled through that transcript and find only the following on the subject of whether penetration occurred:

A. THEN, UH, THEN I WAS TRYING, THEN I WAS TRYING TO GET UP THEN HE PULLED MY ARM THEN HE TOLD ME TO TURN AROUND ON MY BACK THEN HE PULLED MY PANTIES DOWN THEN HE SAID DO YOU WANT SOME CANDY AND I SAID YES, AND THEN HE SAID DO YOU WANT SOME MORE, DO YOU WANT IT RIGHT NOW AND HE GAVE IT TO ME, THEN HE GAVE IT TO ME, THEN HE, UH, PUT HIS PRIVATE IN MY PRIVATE.

\* \* \* \* \* \*

Q. ... OK AND WHEN YOU SAID HE PUT IT ON YOUR PRIVATE UM HOW DID IT FEEL WHEN HE DID THAT?

A. NOT GOOD.

Q. NOT GOOD? OK UM DID HE PUT IT ON THE OUTSIDE OF YOUR PRIVATE OR DID HE PUT IT ON THE INSIDE OF YOUR PRIVATE?

A. STRAIGHT.

Q. HMM.

A. STRAIGHT.

Q. UM I DIDN'T UNDERSTAND. STRAIGHT? WHAT DOES THAT MEAN?

A. HE DID IT STRAIGHT, STRAIGHT.

\* \* \* \* \* \*

Q. ... OK DID HE, DID HE EVER, UH, TOUCH HIS PRIVATE TO ANY OTHER PART OF YOUR BODY?

A. ON THE SIDES. AND STRAIGHT.

Q. ON THE SIDES?

A. AND STRAIGHT.

Q. ON THE SIDES OF WHAT?

A. ON THE SIDE.

*The Exhibits,* State's Exhibit 15 at 9. As I have stated, the only other evidence of record having any relevance on the issue of penetration was the results of a physical examination that was performed upon V.D. shortly after she reported the molestations. The examination revealed no signs of physical trauma to V.D.'s genitals.

It might be argued that V.D.'s statement that Smith put his private *in* her private could be construed as evidence of penetration. Still, it was vague enough that Hoffman sought clarification. The record excerpt reproduced above reflects that V.D. was pressed on precisely that point during the interview. When she was pointedly asked whether Smith placed his penis *inside* her "private", V.D. gave a response whose meaning is as mystifying to me as it evidently was to Hoffman. I may have been inclined to agree in principle that, vague as it was, "put his private in my private" supported a finding of penetration. That inference was no longer reasonable, however, in view of V.D.'s subsequent explanation of what she meant by "in" her private. V.D.'s unintelligible explanation cannot reasonably be construed as proof that Smith "penetrated" her within the meaning of the child molestation statute. That, coupled with the complete lack of evidence of physical trauma, forces me to conclude that the evidence was insufficient to prove penetration. Therefore, there was no evidence from which a jury could find Smith guilty beyond a reasonable doubt of molesting V.D. by an act of sexual intercourse.

In summary, I share in my colleagues' observation that some allowances are appropriate when evaluating the testimony of a young victim of child molesting. I.C. § 35-37-4-6 is one example of measures that have been enacted that permit factfinders some leeway in "connecting the dots" where the victim/witness is young and has limited communication skills. In my view, the distance between V.D. description of the molestation and that which the State was required to prove was too great to be connected by any inference that might reasonably have been drawn from V.D.'s testimony. I observe as a final matter that this is not to say V.D. was incapable of providing evidence that could have proved penetration occurred. The videotape of the interview with Hoffman reveals that V.D. is a child whose cognitive ability and communication skills leave no doubt that she was capable of discerning and relating whether her genitals were "penetrated," as that term is used in this context. Though her narrative and responses proved unhelpful, such is not the only means of obtaining the necessary information when the witness is a child. I note in this regard that the record is devoid of testimonial aids such as dolls and diagrams that are typically used to help young children describe molestation episodes. I believe it is likely here that, out of understandable concern for the young victim's feelings, the investigative authorities did not press the matter far enough and therefore stopped short of proving their case. I fear that this result will not be an isolated one.