## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2016, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brent Kraay,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 28, 2016

Court of Appeals Case No.
19A05-1601-CR-125

Appeal from the Dubois Circuit Court

The Honorable Mark R. McConnell, Judge

Trial Court Cause No.
19C01-1505-FA-317

**Mathias, Judge.**

[1]     Brent Kraay ("Kraay") was convicted in Dubois Circuit Court of two counts of Class A felony child molesting, two counts of Class C felony child molesting,

and one count of Class D felony conducting a performance harmful to minors. The trial court sentenced Kraay to an aggregate term of thirty years of incarceration. Kraay appeals and presents three issues, which we renumber and restate as the following four issues:

I.    Whether the State presented evidence sufficient to support Kraay's convictions;

II.    Whether the statute defining the crime of Class A felony child molesting is unconstitutionally vague;

III.    Whether the trial court erred by denying Kraay's motion to sever the charges involving Kraay's two daughters; and

IV.    Whether Kraay's thirty-year sentence is inappropriate.

We affirm.

## Facts and Procedural History

Kraay married M.R. in 1999, and the marriage produced three daughters: N.K., born in September 1999; M.K., born in 2001; and J.K., born in 2005. Kraay and M.R. were divorced in 2005, after which M.R. and the children moved to Noblesville, and Kraay remained in the former marital residence in Dubois County.

M.R. later remarried but divorced her second husband when it was discovered that he had sexually molested N.K. Kraay later married V.J., who had two children from a previous relationship. After the divorce, Kraay's children would visit him once every two to three months.

During one of these visitations with Kraay, N.K. mentioned to him and V.J. that she had been having dreams of a sexual nature.[1] Allegedly concerned that his daughter might be sexually active, Kraay decided to perform a physical check of N.K. to determine if she was still a virgin. Kraay had N.K. lie down on a bed and remove her pants and underwear. He then manipulated N.K.'s genitalia, held open her labia and checked to see if her hymen was still intact. As he did so, he placed his finger in N.K.'s vagina and touched her hymen.

On another occasion, Kraay decided to talk to N.K. and M.K. about sex. He took the girls into his bedroom and exposed his penis to the girls, explaining that he wanted to tell them about "the boys' parts." Tr. p. 67. He instructed the girls to touch his penis, which they did. Kraay then touched his penis and ejaculated in the girls' presence. He told them that the ejaculate was "sperm" and was used to make a baby. Tr. p. 74. He also had the girls expose their genital area so he could talk about their "parts" too. Tr. p. 67. N.K. testified that Kraay looked at her genitals and "showed how a baby was born." *Id*. N.K. explained that Kraay saw that N.K. "had too much white stuff,"[2] and wiped her vagina with a towel. *Id*. She also testified that Kraay "used his pointer finger . . . and took some of our white stuff out." *Id*. at 91. M.K. too testified that her father reached inside her, although she was unsure as to whether her pants were

---

[1] Initially, N.K. told her stepmother that she was "having sex with little boys." Tr. p. 114. It was later determined that N.K. was referring to dreams she had been having, not actual sexual intercourse. *Id*. at 115.

[2] It is unclear precisely what this "white stuff" refers to. However, as explained *infra*, M.K. was later treated for a yeast infection.

down at the time. Tr. pp. 100-01. Kraay also demonstrated how men and women have sex, using N.K., but both had their pants up at this time. After he was done, Kraay instructed the girls not to tell their mother what he had done.

[7] During another incident, M.K. complained to her stepmother V.J. that her private area was itching and burning. V.J. told Kraay about this and suggested that they go to the hospital. Kraay gave several reasons why they should not go to the hospital and insisted on looking at M.K. himself. Kraay, V.J., and M.K. went into the bedroom, where Kraay instructed M.K. to remove her pants. He then held open M.K.'s labia and asked V.J. to look inside. V.J. stated that it looked like M.K. had a yeast infection and gave her some medicine.

[8] The girls' mother, M.R., at first had no reason to suspect any inappropriate behavior. Though M.K. did tell her mother at one point that she had seen her father's penis, M.R. assumed she had accidentally seen her father in the bathroom. However, during the 2012-13 Christmas break, Kraay informed his ex-wife that he had checked N.K. to see if she was still a virgin. N.K. was in therapy due to the previous molestation by her former stepfather, and in February of 2013, N.K. told her therapist what Kraay had done.

[9] During the subsequent investigation by Indiana Department of Child Services ("DCS") investigator Jessica Hernandez, Hernandez spoke with Kraay, his wife V.J., and his ex-wife, M.R. During a telephone interview, Kraay admitted that he and V.J. were "educating" his daughters about sex and that he wanted to make sure that their hymens were intact. Tr. p. 37. Kraay stated that he used a

wash cloth to wash off the vaginal area of one of his daughters and that some mucus may have transferred to his finger. Kraay also admitted that he showed his daughters his penis and that he had looked at M.K.'s breasts to see if she wore the right size bra. During a subsequent face-to-face interview, Kraay told Hernandez that he had inserted his finger into his daughters' vaginas but again claimed that he did so for educational purposes and did not know that this was wrong. This time, he further admitted that he had shown his penis to the girls.

[10] The matter was then referred to the police. During a police interrogation, Kraay again admitted that he had checked N.K. to see if her hymen was still intact. Although he denied sticking his finger inside N.K., he admitted that he pointed at her hymen and may have touched it. He also admitted that N.K. was "not lying." Ex. Vol., State's Ex. 4. He also admitted that he had checked M.K. to see if she had a yeast infection, that he had shown both girls his penis, and that pre-seminal fluid may have come out of his penis. He claimed that he exposed himself for "educational" purposes and to "kill the curiosity." *Id*.

[11] On May 4, 2015, the State charged Kraay with two counts of Class A felony child molesting, two counts of Class C felony child molesting, and Class D felony conducting a performance harmful to minors. On July 17, 2015, Kraay filed a motion to dismiss, based in part on the alleged vagueness of the statutes under which he was charged. The trial court denied this motion on July 31, 2015. On August 6, 2015, the State amended the charging information to add two more counts of Class C felony child molesting. A jury trial was held on November 17 and 19, 2015. After the State had presented its case-in-chief,

Kraay moved for a directed verdict based again, in part, on the alleged vagueness of the child molesting statute. The trial court denied this motion. At the conclusion of the trial, the jury found Kraay guilty of two counts of Class A felony child molesting, two counts of Class C felony child molesting, and one count of Class D felony conducting a performance harmful to minors. On December 21, 2015, the trial court sentenced Kraay to thirty years on both Class A felony convictions, four years on both Class C felony convictions, and one and one-half years on the Class D felony conviction. The trial court ordered all sentences to be served concurrently, for an aggregate term of thirty years. Kraay now appeals.

## I. Sufficiency of the Evidence

[12] Kraay first claims that the State failed to present sufficient evidence to support his convictions. Our standard of review in reviewing claims of insufficient evidence is well settled: we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Knight v. State*, 42 N.E.3d 990, 993 (Ind. Ct. App. 2015). We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Id*. As an appellate court, we respect the jury's exclusive province to weigh conflicting evidence. *Id*.

[13] It is also well settled that a conviction for child molesting may stand on the uncorroborated testimony of a minor witness. *Smith v. State*, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002). The unfamiliarity of a young victim with anatomical

terms does not make her incompetent to testify when the facts are explained in simple or childlike language which the judge and jury can understand. *Id.*

[14] Kraay argues that his two convictions for Class A felony child molesting were not supported by sufficient evidence. The information charging Kraay alleged that he "did knowingly or intentionally perform deviate sexual conduct with a child under the age of fourteen years, to-wit, by penetrating the female sex organ of [M.K. and N.K.] with his finger." Appellant's App. pp. 34-35. This tracks the relevant statute, which defines Class A felony child molesting as "a person at least twenty-one years of age" who, with a child under fourteen years of age, "performs or submits to sexual intercourse or deviate sexual conduct." Ind. Code § 35-42-4-3(a)(1).[3]

[15] Kraay briefly argues that there was no proof of intercourse. This is beside the point, as Kraay was not charged with committing child molesting by having sexual intercourse. Instead, the State alleged that he performed deviate sexual conduct on N.K. and M.K. At the time relevant to this appeal, "deviate sexual conduct" was defined as "an act involving . . . the penetration of the sex organ or anus of a person by an object." *See* Ind. Code § 35-31.5-2-94(2) (2013).[4]

---

[3] We refer to the versions of the statutes in effect at the time Kraay committed his crimes: 2012 and 2013. *See* Appellant's App. pp. 34-35 (alleging that Kraay committed his crimes between January 1, 2012 and February 18, 2013).

[4] Effective July 1, 2014, our General Assembly repealed the statute defining deviate sexual conduct and replaced it with Indiana Code section 35-31.5-2-221.5, which similarly defines "other sexual conduct" as "an act involving . . . the penetration of the sex organ or anus of a person by an object."

[16] Kraay argues that there was no proof that he committed deviate sexual conduct because the evidence that he penetrated his daughters' sex organs was insufficient. We disagree. First, for purposes of defining deviate sexual conduct, a finger is an "object." *Simmons v. State,* 746 N.E.2d 81, 86 (Ind. Ct. App. 2001). Moreover, with regard to the element of penetration, a detailed anatomical description of penetration is unnecessary. *Smith*, 779 N.E.2d at 115. Instead, proof of the slightest penetration is sufficient to sustain convictions for child molesting, as the statute does not require that the vagina be penetrated, only that the female sex organ, which includes the external genitalia, be penetrated. *Id*. Thus, a conviction for child molesting will be sustained when it is apparent from the circumstances and the victim's limited vocabulary that the victim described an act which involved penetration of the sex organ. *Id*.

[17] Here, N.K. testified that Kraay penetrated her sex organ with his finger. Specifically, she testified that Kraay placed his finger "inside" her when he was checking to see if she was still a virgin. Tr. p. 66. The DCS investigator testified that Kraay admitted to her that he placed his finger in N.K.'s vagina. Kraay also admitted during police interrogation that he touched his daughter's hymen when he was performing his alleged virginity check.[5] From this evidence, the jury could readily conclude that Kraay penetrated N.K.'s sex organ with his finger. Thus, the State adequately established that Kraay performed deviate

[5] *See* Ex. Vol., State's Ex. 4 at 23:21 – 23:24 (video recording of police interview of Kraay, with Kraay stating, "I think I actually did touch it [N.K.'s hymen].").

sexual conduct on N.K. sufficient to support his conviction for Class A felony child molesting.

[18] The same is true with regard to M.K., who testified that Kraay touched her genitalia. M.K. testified that Kraay touched her private part with his finger and took some "white stuff" out. When later asked to clarify whether Kraay "reach[ed] inside, did he do that?" M.K. responded, "To me, oh, yeah." Tr. p. 100. Again, this is sufficient to prove that Kraay's finger penetrated M.K.'s sex organ. Thus, there was evidence from which the jury could reasonable infer that Kraay committed Class A felony child molesting by penetrating M.K.'s sex organ with his finger.

[19] Kraay also claims that there was no evidence of any sexual intent on his part when he touched N.K. and M.K. However, with regard to the two counts of Class A felony child molesting, the State was not required to prove any sexual intent. Our supreme court has held: "the elements of the crime of child molesting under Ind. Code § 35-42-4-3(a) do not include the intent to arouse or satisfy sexual desires." *D'Paffo v. State*, 778 N.E.2d 798, 801 (Ind. 2002).

[20] The *D'Paffo* court explained its holding as follows:

> We believe that the structure of Ind. Code § 35-42-4-3 and of the other crimes in the sex crimes chapter of the criminal code are best understood to include the "intent to arouse or satisfy sexual desires" element only where it is expressly set forth. What is at stake here is whether the Legislature meant to criminalize all sexual intercourse and deviate sexual conduct with children or only that performed with intent to arouse or satisfy sexual

desires. We think it more likely that the Legislature meant to criminalize such conduct performed, for example, to perpetrate revenge or to coerce a parent to take some type of action, in addition to conduct performed to arouse or satisfy sexual desires.

*Id.*

[21] Acknowledging that its holding appeared to criminalize medical and personal hygiene procedures involving penetration, the *D'Paffo* court set forth an important limitation on the scope of criminal liability under the child molesting statute:

> It is well established that conviction of child molesting requires the State to prove beyond a reasonable doubt *criminal intent* on the part of the defendant. Where the evidence warrants an inference that an alleged penetration of the sex organ or anus of a person by an object *was in furtherance of a bona fide medical or personal hygiene-related examination or procedure*, we believe that [a] defendant would be entitled to an appropriate instruction as to criminal intent.

*Id.* at 802 (emphases added).

[22] Here, the jury was instructed regarding the requirement of intent on the part of Kraay and that it was a defense to the crime "if you believe that the penetration by an object was in furtherance of a bona fide medical or person hygiene-related examination or procedure." Appellant's App. p. 130. The jury obviously rejected this claim, and with good reason. The jury also heard evidence that Kraay made his daughters touch his penis and ejaculated in front of them. This

severely undermines his claim that he was merely checking his daughters' genitalia for appropriate medical or personal hygiene reasons.

[23] We similarly reject Kraay's claim that the evidence was insufficient to support his two convictions for Class C felony child molesting, both of which were based on Kraay having M.K. and N.K. touch his penis. *See* Appellant's App. p. 41. Unlike a conviction for child molesting based on deviate sexual conduct, a conviction for Class C felony child molesting based on fondling or touching does require that the State prove that the defendant acted with the intent to arouse or gratify the sexual desires of either the defendant or the child. *See* I.C. § 35-42-4-3(b) ("[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony."); *see also D'Paffo*, 778 N.E.2d at 800-01 (noting the sexual desire intent requirement in subsection (b) of the child molesting statute).

[24] Here, Kraay told his daughters to touch his penis, and Kraay subsequently masturbated and ejaculated in their presence. This adequately establishes that he acted with the intent to arouse or satisfy his own sexual desires. In short, the State presented evidence sufficient to support all of Kraay's convictions.[6]

---

[6] Kraay presents no cogent argument regarding the sufficiency of the evidence supporting his conviction for Class D felony conducting a performance harmful to minors.

## II. Vagueness

Kraay also claims that subsection 3(a) of the child molesting statute, because it requires no sexual intent on the part of a defendant, is unconstitutionally vague.[7] When a statute is challenged as unconstitutional, we start with a presumption that the statute is constitutional. *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). The burden is on the defendant to rebut this presumption. *Id*. When addressing a claim that a statute is impermissibly vague, we must resolve all reasonable doubts in favor of the statute's constitutionality. *Id*. We will not conclude that a statute is unconstitutionally vague so long as individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. *Id*. "The statute need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of prohibited conduct." *Id*.

A statute may also be impermissibly vague if its terms invite arbitrary or discriminatory enforcement. *Id*. There must be something in the criminal statute in question to indicate where the line is to be drawn between trivial and substantial things, so that erratic arrests and convictions for trivial acts and omissions will not occur. *Id*. However, a statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case; the

---

[7] Because Kraay filed a pre-trial motion to dismiss on grounds of vagueness, he has preserved this issue for appeal. *See Slone v. State*, 912 N.E.2d 875, 878 (Ind. Ct. App. 2009) (noting that the failure to file a proper motion to dismiss raising a constitutional challenge to a criminal statute generally waives the issue on appeal), *trans. denied*.

defendant is not at liberty to devise hypothetical situations which might demonstrate vagueness. *Id.*

[27] Kraay claims that the child molesting statute is vague because it is unclear as to what acts are criminalized and what acts are not. We disagree. The statutory language itself is straightforward and unambiguous: "a person who, with a child under fourteen (14) years of age, performs or submits to . . . deviate sexual conduct commits child molesting." I.C. § 35-42-4-3(a). And deviate sexual conduct is clearly defined as "an act involving . . . the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94(2) (2013). Thus, *anyone* who penetrates the sex organ or anus of a child under the age of fourteen with an object commits child molesting. *See D'Paffo*, 778 N.E.2d at 801-02. We do not find this to be vague.

[28] Kraay attempts to introduce vagueness into the statute by arguing that it is uncertain to whom the "bona fide medical or personal hygiene-related examination or procedure" exception or defense set forth in *D'Paffo* is available. *See* Appellant's Br. p. 18 ("Do Kraay's actions fit within the medical/personal hygiene exceptions? If they do, are some or all other family members excluded from the exceptions? Are the defenses available only to doctors? Nurses? Physician assistants? Therapists? Emergency personnel? Teachers?"). We need not decide these hypotheticals. *See Baumgartner*, 891 N.E.2d at 1136. The proper question is whether the statute is vague as applied to the precise circumstances of the present case. *Id*. We think not.

[29] The "bona fide medical or personal hygiene" defense was considered and rejected by the jury in the present case. Kraay had no bona fide reason to place his fingers in his daughters' sex organs. The fact that the jury rejected his defense does not render the statute unconstitutionally vague.

### III. Severance

[30] Kraay next argues that the trial court erred in denying his motion to sever the charges against him. Specifically, he claims that the charges involving N.K. should have been severed from the charges involving M.K.

[31] Under the controlling statute:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> (1) are of the same or similar character, even if not part of a single scheme or plan; or
>
> (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind. Code § 35-34-1-9(a).

[32] Furthermore, if "two (2) or more offenses have been joined for trial in the same indictment or information *solely* on the ground that they are of the same or similar character, the defendant *shall* have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a) (emphases added).

[33]    Thus, if two or more offenses have been joined solely under subsection 9(a)(1), then the defendant has the right to severance, but if the offenses were joined under subsection 9(a)(2), the defendant is not entitled to severance. *See Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). Subsection 9(a)(1) refers to the nature of the charged offenses, whereas subsection 9(a)(2) refers to the operative facts underlying those charges. *Id.*

[34]    In some instances, crimes that are of the same or similar character may also be based a series of connected acts. *Id.* To determine whether offenses warrant joinder under subsection (9)(a)(2), courts should ask whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements. *Id.* It is well-settled that a common *modus operandi* and motive can sufficiently link crimes committed on different victims. *Id.* But establishing the defendant's unique method of committing the crimes is not the exclusive way of showing his acts are connected together. *Id.* Offenses can also be linked by a defendant's efforts to take advantage of his special relationship with the victims. *Id.* A common relationship between the defendant and the victims may even result in an interconnected police investigation into the crimes, producing overlapping evidence. *Id.*

[35]    In the present case, Kraay argues that the charges against him were joined solely on the ground that they were of the same or similar character and that he was therefore entitled to severance of the charges as a matter of right. The State claims that Kraay's charges were joined because they were "based on the same conduct or on a series of acts connected together or constituting parts of a single

scheme or plan" under subsection 9(a)(2) and that Kraay is not entitled to severance. We agree with the State.

[36] Kraay's claim that the charges against him were of the same or similar character has some merit. However, we cannot say that the offenses were joined *solely* on that ground, which would require severance. As in *Pierce*, "the incidents here share much more than their criminal category." 29 N.E.3d at 1266. Indeed, as in *Pierce*, Kraay was not charged with unrelated child molestations; they were connected by his victims, his method, and his motive. *See id*. Kraay exploited his position as a caregiving father by molesting his own daughters. *See id*. (noting that defendant exploited his position of a trusted grandfather or great uncle by molesting young female family members in his care). N.K.'s allegations against her father initiated the investigation which uncovered the molestation against both girls. *See id*. (noting that allegations made by one victim led police to identify other victims). As in *Pierce*, much of the evidence overlapped, as at least one of the incidents occurred when both girls were present. *See id*. Kraay's method was also fairly consistent: he framed his molestation as "educational" or health-related. *See id*. His motive was also apparent: to fulfill his deviant sexual desires. To quote the court in *Pierce*, "[w]e decline to require separate trials as of right where the defendant committed the same crime, in substantially the same way, against similar victims." *Id*.

[37] Thus, the charges against Kraay were not joined solely because they were of a same or similar character. They were also joined because they were based on the same conduct or on a series of acts connected together or constituting parts of a

single scheme or plan. Accordingly, Kraay did not have a right to severance, and the trial court did not err in denying his motion to sever the offenses.

## IV. Sentencing

[38] Lastly, Kraay claims that his thirty-year aggregate sentence is inappropriate. Even if a trial court acts within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of that sentence. *Trainor v. State*, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011). This authority is implemented via Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Id*. at 355-56.

[39] Although we have the power to review and revise sentences, "[the principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). The burden is on the

defendant to persuade us that his sentence is inappropriate. *Trainor*, 950 N.E.2d at 356 (citing *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007)).

[40] Kraay was convicted of two counts of Class A felony child molesting. The sentencing range for a Class A felony is twenty to fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4. The trial court sentenced Kraay to the thirty-year advisory sentence on both Class A felony convictions and ordered all sentences to be served concurrently, for an aggregate term of thirty years. Because the advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence. *Trainor*, 950 N.E.2d at 356.

[41] The nature of Kraay's offenses support the trial court's decision to impose the advisory sentence of thirty years. Kraay inserted his finger into two of his daughters' sex organs under the pretense of "education" or medical examination. He not only exposed his penis to the girls, but he told them to touch it and ejaculated while they were watching, telling them that this "sperm" was used to make babies. He then demonstrated how to have sex with N.K. That there was no apparent physical harm to his daughters does not lessen that Kraay betrayed the trust of his daughters and abused his position of authority over them.

[42] Kraay's character also does nothing to persuade us that his advisory sentence is inappropriate. Although Kraay does not have an extensive criminal history, the

facts surrounding his prior conviction for criminal trespass, as revealed by the testimony of the victim of the trespass at the sentencing hearing, demonstrate Kraay's deviant character. The victim of Kraay's prior trespass conviction explained that Kraay had sexually harassed her and even grabbed her breasts and buttocks. Despite being told that she was not interested in Kraay's advances, Kraay went into the victim's home and rummaged through the drawers containing her underwear.

[43] Giving due deference to the trial court's sentencing decision, and considering the nature of Kraay's offenses and his character, we conclude that Kraay has not met his burden of showing that his thirty-year aggregate sentence is inappropriate.

## Conclusion

[44] The State presented sufficient evidence to support Kraay's convictions, and the child molesting statute is not unconstitutionally vague as applied to the facts of this case. Because the charges against Kraay were not joined solely on the grounds that they were of the same or similar character, Kraay was not entitled to severance of the charges. Also, Kraay's thirty-year aggregate sentence is not inappropriate in light of the nature of the offense and the character of the offender.

[45] Affirmed.

Vaidik, C.J., and Barnes, J., concur.