# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 17 2020, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ray L. Szarmach
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy
Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Demetrius A. Wilson, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | December 17, 2020 <br><br> Court of Appeals Case No. 20A-CR-8 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Diane Ross Boswell, Judge <br><br> Trial Court Cause No. 45G03-1604-F1-1 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Demetrius Wilson was found guilty of child molesting, a Level 1 felony; incest, a Level 4 felony; and child molesting, a Level 4 felony. The trial court subsequently vacated the judgments for incest and the Level 4 felony child molesting and sentenced Wilson to thirty-five years in the Indiana Department of Correction for Level 1 felony child molesting. Wilson now appeals, raising multiple issues which we restate as: (1) whether Wilson's Fifth Amendment right against compulsory self-incrimination was violated; (2) whether there was sufficient evidence to sustain Wilson's conviction for child molesting; and (3) whether the trial court's conduct deprived Wilson of a fair trial. We conclude that Wilson's Fifth Amendment right against self-incrimination was not violated, that there was sufficient evidence to sustain Wilson's child molesting conviction, and that the trial court's conduct did not constitute fundamental error. Accordingly, we affirm.

# Facts and Procedural History

[2] J.W., born in 2009, is the daughter of Wilson and J.T. On March 4, 2016, J.W. spent the night at the home of Wilson's grandmother. The following day Wilson took J.W. to the home of one of his friends. After leaving the friend's home, Wilson drove J.W. down "a aisle" between houses where they stopped. Jury Trial Transcript, Volume 4 at 76. J.W. had been in the back seat but was told by Wilson to get into the front. Wilson then took J.W.'s pants off. J.W. testified that Wilson touched her bottom and "private area" with his "bone"

and put his "bone" inside of her.[1] *Id*. at 77, 80. Wilson and J.W. then returned to Wilson's grandmother's home.

[3] Later that day Wilson drove J.W. to J.T.'s home. Once J.W. had been dropped off she told J.T. what had occurred. J.T. called 911 and transported J.W. to Methodist Southlake Hospital where a sexual assault exam was performed by Claudine Ruzga. Ruzga did not notice any trauma to J.W.'s genitals when conducting the exam but testified that it was common to not find trauma unless there was "full penetration." Tr., Vol. 3 at 112-13. However, she did find a foreign hair on J.W.'s external labia that was "small, black, curly, [and] coarse[.]" *Id.* at 111.

[4] During the investigation, Detective Tamara Hall of the Gary Police Department spoke to Wilson over the phone on March 18, 2016 and he told her that he could meet with her on March 21. Wilson did not appear on March 21 but told Detective Hall that he had missed a flight from Colorado. Wilson told Detective Hall that he would be back in Indiana on March 25 and would speak to her then. Again, Wilson did not appear to meet Detective Hall. Wilson claimed that he did not have money to travel back and forth between Colorado and Indiana and would only appear if Detective Hall sent him money. As a result, Detective Hall and Wilson never met.

---

[1] J.W. testified that Wilson's "bone" was what he uses for "the restroom[,]" Tr., Vol. 4 at 77-78, and stated that it looked like "a stick[,]" *id.* at 80.

On April 5, 2016, the State charged Wilson with child molesting, a Level 1 felony; incest, a Level 4 felony; and child molesting, a Level 4 felony. Wilson's trial began October 7, 2019 and lasted four days. J.W. was called to testify and at the beginning of her testimony she began to cry. The State attempted to console and encourage her, stating, "You can do this, 'J,' just like we practiced." Tr., Vol. 4 at 66. The trial court then had one of the prosecutors bring J.W. around to the back of the stand where the trial court gave J.W. a hug and asked, "[C]an you try? Okay. It's important, okay?" and said, "Try your best, and if you have to cry, you can cry. Okay. All right. We love you, babe." *Id.* at 67. All of this occurred in front of the jury. The trial court then allowed J.W. to hold a stuffed animal and she proceeded to testify.

Detective Hall testified regarding Wilson's failure to meet with her. Wilson did not object to this testimony. At the conclusion of the State's case in chief, Wilson was given the opportunity to present his case in chief but decided to rest. The trial court and Wilson had a brief conversation in the presence of the jury regarding whether Wilson would testify. The conversation went as follows:

> [Wilson's Counsel]: Your Honor, based on the testimony and the evidence presented, the defense rests.
>
> THE COURT: Alright. Alright. So your client is not testifying. Mr. Wilson, you have been advised of your right to testify in this matter, and you understand?
>
> [Wilson]: Yes.

THE COURT: And you've consulted with your attorney about whether or not you want to testify?

[Wilson]: Yes.

THE COURT: And it is your decision today that you will not testify.

[Wilson]: Yes.

*Id.* at 122.

[7] During the State's closing argument, the prosecutor referenced Wilson's failure to meet with Detective Hall, stating:

> [Wilson] sets up a meeting with the detective, doesn't tell her he's in Colorado, doesn't have any plans to go to Colorado, but boy, when that meeting rolls around, he sure isn't in Indiana anymore, is he? But maybe he'll come back if you send him 400 bucks. That's outrageous.

*Id.* at 154.

[8] The jury found Wilson guilty as charged. On December 3, 2019, Wilson's sentencing hearing was held, and his incest and Level 4 felony child molesting charges were vacated by the trial court. Wilson was then sentenced to thirty-five years in prison for the remaining child molesting conviction. Wilson now appeals.

# Discussion and Decision

# I. Fifth Amendment Privilege

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." This privilege extends to the States through the Fourteenth Amendment. *Withrow v. Williams,* 507 U.S. 680, 689 (1993). Wilson argues that his Fifth Amendment right against compulsory self-incrimination was violated: (A) when Detective Hall's testimony that Wilson missed two meetings was introduced; and (B) when the State mentioned Wilson's failure to meet with Detective Hall during his closing argument.[2] We address each in turn.

## A. Admission of Evidence

Wilson argues that the trial court committed fundamental error by allowing Detective Hall to testify that Wilson missed two scheduled appointments with her.

The trial court has broad discretion in ruling on the admissibility of evidence. *Small v. State*, 632 N.E.2d 779, 782 (Ind. Ct. App. 1994), *trans. denied*. We will disturb its ruling only upon a showing of abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic

---

[2] Wilson briefly argues that the trial court erred by asking him if he would testify while in the presence of the jury. Wilson did not object to this questioning during trial and failed to argue fundamental error until his reply brief. *See* Appellant's Reply Brief at 10 ("The Court . . . committed fundamental error in requiring [Wilson] to claim his Fifth Amendment privileges in front of the jury."). But he may not raise fundamental error for the first time in his reply brief. *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011). Further, he fails to present a cogent argument supported by any case law. Ind. Appellate Rule 46(A)(8)(a). Thus, Wilson's claim is waived.

and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Baxter v. State*, 734 N.E.2d 642, 645 (Ind. Ct. App. 2000). However, a contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). Wilson concedes that he did not object to Detective Hall's testimony but argues that its admission was fundamental error.

[12]  A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred.  *Id.* The error claimed must either "make[] a fair trial impossible" or constitute a "clearly blatant violation[] of basic and elementary principles of due process[.]" *Clark v. State,* 915 N.E.2d 126, 131 (Ind. 2009). This exception is available only in "egregious circumstances." *Brown v. State,* 799 N.E.2d 1064, 1068 (Ind. 2003).

[13]  Wilson contends that the questioning of Detective Hall was deliberately used to draw attention to the fact that Wilson had something to hide. Wilson further states that "Indiana Courts have held that post arrest, pre-*[M]iranda* silence cannot be used in the State's case in chief." Appellant's Brief at 14. However, Wilson was not under arrest during the events about which Detective Hall testified. Thus, any silence of Wilson's would be pre-arrest and pre-*Miranda*.

[14]  This court has held that testimony regarding a defendant's failure to contact a detective could be used in the State's case-in-chief. *See Owens v. State*, 937

N.E.2d 880, 886 (Ind. Ct. App. 2010), *trans. denied*.[3] In *Owens*, a detective testified that he tried to call the defendant multiple times but failed to reach him. The detective further testified that he went to the defendant's house and left his card with the message "Please call me" on the back but never heard from the defendant. *Id.* at 885. We determined that even following federal case law where pre-arrest, pre-*Miranda* silence was protected by the Fifth Amendment, the defendant's lack of response to the detective was outside the ambit of the Fifth Amendment. Because the defendant's "mere lack of response [did] not support a finding that he invoked the right to remain silent[,]" we held that the Fifth Amendment did not prohibit the prosecution from using as substantive evidence in its case in chief the defendant's silence in response to police efforts to contact him. *Id.* at 891.

[15] Here, Detective Hall spoke to Wilson over the phone on March 18, 2016, and Wilson told her that he could meet with her on March 21. Wilson did not appear on March 21 because, as he told Detective Hall, he had missed a flight from Colorado. Wilson told Detective Hall that he would be back in Indiana on March 25 and would speak to her then. But again, Wilson did not appear to meet Detective Hall. Wilson claimed that he did not have money to travel back

---

[3] The federal circuit courts are split as to whether the Constitution permits the prosecution to use a defendant's pre-arrest, pre-*Miranda* silence as substantive evidence in its case-in-chief. We did not make a determination in *Owens* about which side of the federal circuit split this Court had decided to follow. Although we concluded that the defendant in *Owens* had not invoked the right to remain silent and therefore the Fifth Amendment was not implicated, we stated, "We emphasize that we do not today determine that all pre-arrest, pre-*Miranda* silences are unprotected by the Fifth Amendment and that our holding is strictly limited to the particular facts currently before us." *Owens*, 937 N.E.2d at 892.

and forth between Colorado and Indiana and would only appear if Detective Hall sent him money.

[16] The facts of this case are analogous to *Owens.* In both cases, the defendant failed to cooperate with law enforcement during the investigation of a crime. Wilson's failure to meet with Detective Hall is not an invocation of his right to remain silent. *See Kubsch v. State*, 784 N.E.2d 905, 914 (Ind. 2003) (stating "'[s]ilence' does not mean only muteness; it includes the statement of a desire to remain silent") (quotation omitted). We therefore find, like we did in *Owens*, that Wilson's Fifth Amendment right to silence was not implicated by this testimony, and the trial court did not commit fundamental error in admitting evidence of Wilson's failure to cooperate with Detective Hall.

## B. Prosecutorial Misconduct

[17] Wilson also argues that his conviction must be reversed because a statement in the prosecutor's closing argument violated his Fifth Amendment right against self-incrimination. The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence. *Boatright v. State,* 759 N.E.2d 1038, 1043 (Ind. 2001) (citation omitted).

[18] However, in order to preserve a claim of prosecutorial misconduct for appeal, a defendant must raise a contemporaneous objection and request an admonishment; if the admonishment is not given or is insufficient to cure the

error, then he must request a mistrial. *Nichols v. State*, 974 N.E.2d 531, 534 (Ind. Ct. App. 2012). Wilson concedes that he did not object during the State's closing argument. Thus, in order to succeed, Wilson must show the grounds for prosecutorial misconduct *and* the additional grounds for fundamental error. *Booher v. State*, 773 N.E.2d 814, 818 (Ind. 2002).

[19] In reviewing a claim of prosecutorial misconduct we "determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she [sh]ould not have been subjected." *Id.* at 817 (quotation omitted). For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm." *Id*. "The mere fact that an alleged error implicates constitutional issues does not establish that fundamental error has occurred." *Schmidt v. State,* 816 N.E.2d 925, 945 (Ind. Ct. App. 2004) (citing *Wilson v. State,* 514 N.E.2d 282, 284 (Ind. 1987)), *trans. denied.* The defendant bears the burden of showing that a comment improperly penalized the exercise of the right to remain silent. *Moore v. State,* 669 N.E.2d 733, 736 (Ind. 1996).

[20] Wilson argues that the statement made by the prosecutor in his closing argument was fundamental error because it was an invitation to the jury to draw an adverse inference from Wilson's silence. We disagree.

The Fifth Amendment prohibits the prosecutor from commenting at trial on the defendant's decision not to testify. *Owens*, 937 N.E.2d at 893. However, our supreme court has explained that if the prosecutor's comment in its totality is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal. *Boatright*, 759 N.E.2d at 1043; *see also Hopkins v. State*, 582 N.E.2d 345, 348 (Ind. 1991) ("Arguments which focus on the uncontradicted nature of the State's case do not violate the defendant's right not to testify.").

Here, the prosecutor's comment did not focus on, or even mention, Wilson's decision not to testify. The prosecutor stated:

> [Wilson] sets up a meeting with the detective, doesn't tell her he's in Colorado, doesn't have any plans to go to Colorado, but boy, when that meeting rolls around, he sure isn't in Indiana anymore, is he? But maybe he'll come back if you send him 400 bucks. That's outrageous.

Tr., Vol. 4 at 154.

The prosecutor's comment addresses Wilson's failure to meet with Detective Hall which as stated above was not an exercise of the right to remain silent. The prosecutor's statement does not focus on Wilson's failure to testify and thus was not improper.

# II. Sufficiency of the Evidence

[24]    Wilson argues that the evidence was insufficient to sustain his child molesting conviction. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* (quotation omitted). We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.* The uncorroborated testimony of a child victim is sufficient to support a conviction of child molesting. *Downey v. State*, 726 N.E.2d 794, 796 (Ind. Ct. App. 2000), *trans. denied*.

[25]    To convict Wilson of child molesting as a Level 1 felony, the State was required to prove beyond a reasonable doubt that Wilson, being at least twenty-one years old, knowingly or intentionally performed or submitted to sexual intercourse or other sexual conduct with a child under fourteen years of age. Ind. Code § 35-42-4-3(a)(1). "Sexual intercourse" means an act that includes "*any* penetration of the female sex organ by the male sex organ." Ind. Code § 35-31.5-2-302 (emphasis added).

[26]    Wilson argues that there was no evidence that he penetrated J.W. and therefore no evidence that he performed sexual intercourse. Wilson relies on the testimony of Claudine Ruzga, a physician's assistant, who examined J.W. the

morning of March 6, 2016. Ruzga testified that when she conducted the external genital exam on J.W. she found a small, black, curly course hair but did not find any genital trauma. Ruzga further testified that if there was penetration past the hymen, she would expect to see genital trauma. Wilson contends that because of the lack of genital trauma there "was no evidence that [he] entered or penetrated the female sex organ as required by Indiana Law." Appellant's Br. at 18. We disagree.

[27] We have held that the slightest penetration of the female sex organ, including external genitalia, constitutes child molesting. *Seal v. State*, 105 N.E.3d 201, 211 (Ind. Ct. App. 2018), *trans. denied*; *see also Smith v. State*, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002) (stating that "our statute defining sexual intercourse does not require that the vagina be penetrated"), *trans. denied*. Thus, full penetration resulting in genital trauma is not required to prove child molesting.

[28] We need not rely solely on J.W.'s medical examination to determine whether there was evidence of penetration. Testimony from the victim alone is sufficient to sustain a conviction. *See Warren v. State*, 701 N.E.2d 902, 906 (Ind. Ct. App. 1998) ("[A] conviction may stand on the uncorroborated evidence of a minor witness."), *trans. denied*.

[29] Here. J.W. testified that Wilson put his "bone" inside of her. Tr., Vol 4 at 77. J.W. further testified that it went "in between" and that it hurt but she did not bleed. *Id.* at 81. And while unable to give a specific name, J.W. stated that Wilson's "bone" was what he used it "[t]o go to the restroom," *id.* at 78, and

that it looked "[l]ike a stick," *id.* at 80. We have held that "a conviction for child molesting will be sustained when it is apparent from the circumstances and the victim's limited vocabulary that the victim described an act which involved penetration of the sex organ." *Smith,* 779 N.E.2d at 115. The unfamiliarity with anatomical terms does not make a young victim incompetent to testify. *Id.* (noting facts can be "explained in simple or childlike language which the judge and jury can understand").

[30] We conclude that J.W.'s testimony described an act which involved the penetration of her sex organ. Thus, J.W.'s testimony alone is sufficient evidence from which the jury could conclude that Wilson was guilty of child molesting as a Level 1 felony.

# III.  Judicial Misconduct

[31] Wilson argues that the trial court demonstrated unfair bias and prejudice against Wilson by its conduct during J.W.'s testimony. The law presumes that a judge is unbiased and unprejudiced. *In re Edwards,* 694 N.E.2d 701, 711 (Ind. 1998). To assess whether the judge has crossed the barrier into impartiality, we examine both the judge's actions and demeanor. *Dixon v. State,* 154 Ind.App. 603, 621, 290 N.E.2d 731, 741 (1972). However, we must also remember that a trial judge must be given latitude to run the courtroom and maintain discipline and control of the trial. *Id.* at 620, 290 N.E.2d at 740.

[32] Generally, a contemporaneous objection is required to preserve an issue for appeal. *See Anderson v. State,* 653 N.E.2d 1048, 1051 (Ind. Ct. App.

1995). Wilson failed to contemporaneously object to the trial court's conduct and statements. An appellant who seeks to overcome waiver must demonstrate fundamental error, which is a blatant error that denies the defendant due process. *Woods v. State*, 98 N.E.3d 656, 664 (Ind. Ct. App. 2018), *trans. denied*. If a judge is biased, fundamental error exists because trial before an impartial judge is an essential element of due process. *Id.* However, Wilson also failed to assert that the trial court committed fundamental error; thus, his claim is waived.[4]

[33] We do not believe that the trial court's behavior was "so prejudicial to the defendant that he could not have had a fair trial." *Robinette v. State*, 641 N.E.2d 1286, 1288 (Ind. Ct. App. 1994). Bias and prejudice violate a defendant's due process right to a fair trial only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding. *Everling v. State*, 929 N.E.2d 1281, 1288 (Ind. 2010). Here, the trial court consoled J.W. in front of the jury but did not express an opinion regarding Wilson's guilt or innocence. Thus, the conduct does not constitute fundamental error.

[34] Nevertheless, we must address the trial court's handling of the situation. Judges are required to "perform all duties of judicial office fairly and impartially." Ind.

---

[4] Wilson cites multiple Indiana Rules of Judicial Conduct; however, the Indiana Supreme Court has exclusive jurisdiction over alleged violations of the Code of Judicial Conduct. *In Re Guardianship of Hickman,* 805 N.E.2d 808, 814-15 (Ind. Ct. App. 2004), *trans. denied*.

Judicial Conduct Rule 2.2. Judicial impartiality is an essential element of due process, and a judge who is unable to maintain the appearance of impartiality during an emotionally charged proceeding should recuse in favor of a more dispassionate magistrate. Once it became clear that J.W. was losing her composure, the trial court should have called a recess and allowed J.W. to be comforted and, if possible, regain her composure outside the presence of the jury. If J.W. had been unable to regain her composure, the trial court and the parties could have explored the possibility of having her testify via a "two-way closed circuit television arrangement" or by videotape pursuant to Indiana Code Section 35-37-4-8. The trial court's sympathetic response to J.W.'s distress is understandable, but it should not have occurred in front of the trier of fact.

# Conclusion

Concluding that Wilson's Fifth Amendment right against self-incrimination was not violated, that there was sufficient evidence to sustain Wilson's child molesting conviction, and that the trial court's conduct did not constitute fundamental error, we affirm.

Affirmed.

Crone, J., and Brown, J., concur.